## EX PARTE C. M. BUTIN.

· *No. 3226.    Decided December 14.*

**1. Occupation Taxes.**—The Act of April 6, 1889, provides for the levy and collection as an occupation tax "from every person or firm who peddles out clocks, or cooking stoves, or ranges over the county, $250 for the State and $100 for each county in which they make a sale." As against the "Wrought Iron Range Company of St. Louis, Missouri," the Comptroller of Public Accounts of this State construed the said act to levy the occupation tax stated upon every wagon used by it in peddling cooking ranges in Travis County. The company paid the tax thus levied on two of the wagons employed by it in the sale of ranges in Travis County, but not upon its third wagon, used by the relator, as its employe, in the sale of ranges. The relator was arrested and is held under an information for pursuing the occupation of a peddler of cooking ranges without having paid the tax levied, etc. The contention of the relator is that, as applied to above state of facts, the said act is obnoxious to the interstate commerce provision of the Constitution of the United States (art. 8, sec. 1), in that it restricts. commerce between the States; 2, that it conflicts with and violates section 1 of article 8 of the Constitution of this State, which exempts persons engaged in agricultural or · mechanical pursuits from the payment of occupation taxes; and 3, that it conflicts with and violates section 2 of article 8 of the Constitution of this State, which provides that all occupation taxes shall be uniform upon the same class of subjects. *Held,* that neither of the said propositions is tenable.

**2. Same—Statute Construed.**—*Held:* The Comptroller's construction of the Act. of April 6, 1889, as above set forth, is erroneous. "Firm," as used in the said act, is a term interchangeable with the term "company" or "corporation," and it was the purpose of the said act to impose the tax specified upon the firm who pursues the occupation of peddling, etc., without restriction or limitation as to the number of agents, or wagons it employs in pursuing the said occupation.

HABEAS CORPUS on original application to the Court of Appeals. The opinion discloses the case.

*H. E. Shelley* and *D. H. Hewlett*, for relator.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This is an original application to this· court for the writ of *habeas corpus*. The application was first made to · the Hon. J. M. Brackenridge, county judge of Travis County, who, for · the reasons assigned and endorsed by him on the petition, declined to entertain and waived jurisdiction of the matter. Application was then made to this court, which granted the writ. The matters of fact involved. are set out in an agreed statement of the facts.

The applicant was arrested on an information filed in the County Court · of Travis County July 24, 1889, founded upon a complaint of that date,. charging that he, on the 23d day of July, A. D. 1889, in Travis County,. and State of Texas, did then and there unlawfully engage in, pursue,. and follow the occupation of a peddler of cooking ranges over said county · and State, the said occupation being taxed by law, without first obtain-

ing a license therefor; that the taxes then and there due by him to the said State upon said occupation amounted to sixty-two dollars and fifty-two cents, and the taxes then and there due by him to said county upon said occupation amounted to twenty-five dollars, etc.

The applicant at the time of the filing of the complaint and of the commission of the alleged offense was the agent and servant of the Wrought Iron Range Company of St. Louis, Missouri, by which company he had been employed to sell its cooking ranges. The company had, prior to the sale made by the applicant, and within the quarter of the year covering that time, paid one-quarter of the annual State tax of $250, and the county tax of $100, imposed and levied by act of the Twenty-first Legislature, pp. 21 to 29, session acts, on peddlers of cooking ranges, to the tax collector of Travis County, on and for two of its wagons used by it in conducting its sales in said county. It was at the direction and order of this company that the applicant, with an additional wagon, was pursuing the alleged occupation at the time of his arrest without having first paid the further demand for a quarter's tax on the wagon being used by him.

The applicant was bailed, but on the —— day of September his bondsmen surrendered his custody to the sheriff of Travis County, who now holds such custody, as appears from the return on the writ. His presence in court has been waived by himself and his counsel.

The Wrought Iron Range Company, the employer and principal of the applicant, is a manufacturing concern, duly incorporated under the laws of the State of Missouri; it has its domicile and principal place of business at the city of St. Louis, in said State, where, also, is situated its manufactory. The main product of its manufacture is, as its name implies, wrought iron cooking ranges. This company, at the time of the passage of the act before referred to, and at the time of the arrest of the applicant, was, and for several years past had been, engaged in selling its products of wrought iron ranges within the limits of this State. Its manner of conducting such business was as follows:

The territory of the State designed to be covered by its canvass for and sales of its goods was divided into convenient districts or departments, to each of which was assigned a superintendent or foreman, charged with the proper conduct and discharge of the company's business therein. A given number of wagons and teams, owned by the company, were also assigned to each district or department, together with a driver for each wagon and team, who also acted as and discharged the duty of salesman of the goods entrusted to him; all being under the supervision, management, and control of the respective superintendents. The superintendents and the drivers of the teams were all employed by the company, and were paid current wages for their services, receiving no other or further compensation therefor. All the expense incident to the business was borne and paid by the company. The entire outfit was owned by the company.

The goods intended for sale in Texas were shipped from St. Louis, billed to the company, to designated points within the territory then covered by the company's operations, and were received by the superintendents of the respective districts or departments to which the goods were shipped. They were then loaded into the wagons, placed in charge of their respective drivers, who canvassed different parts of the territory in search of purchasers, made sales and delivery of goods from the wagon to the purchasers. In this manner was the business of the company in Texas being conducted at the time of the arrest of the applicant, he being at the time one of the drivers and salesmen of the company.

After the passage of the occupation tax law of the Twenty-first Legislature (April 6, 1889), the Comptroller of Public Accounts of the State of Texas instructed the tax collectors of the various counties of the State where the company was doing business that the company was liable to and to exact of it the payment of an occupation tax of two hundred and fifty dollars for the State and one hundred dollars for the county, for each and every wagon used by it in its business, he holding that to be the proper construction of the law in its application to this company.

This case grows out of the exaction of one quarter's tax on the wagon driven by applicant, after the company had paid to the tax collector of Travis County one quarter's tax on two of its wagons then being used in Travis County, the quarter paid for embracing the time in which this applicant pursued the business and made the sale for which he was arrested.

In the law passed by the last Legislature with regard to levy and collection of occupation taxes it is provided, amongst other matters, that there shall be levied and collected as an occupation tax "from every person or firm who peddles out clocks or cooking stoves or ranges over the county, two hundred and fifty dollars for the State, and one hundred dollars for each county in which they make a sale." Gen. Laws, 21st Leg., p. 27.

It is insisted that this statute, when applied to the facts of this case as above stated, is obnoxious to the interstate commerce provision of the Constitution of the United States (art. 8, sec. 1, Const. of U. S.), in that it restricts commerce between the States.

2. That it conflicts with and violates section 1, article 8, of the Constitution of Texas, which exempts persons engaged in agricultural or mechanical pursuits from the payment of occupation taxes; and, 3, that it conflicts with and violates section 2, article 8, of the Constitution of Texas, which provides that all occupation taxes shall be uniform upon the same class of subjects.

In our opinion neither of these positions is maintainable. We haven't the time to discuss these propositions, but we have maturely considered

them, and deem it only necessary to state our conclusions derived from our investigations of the questions.

The only question in the case is as to the proper construction to be placed upon the language of the statute. It seems that the Comptroller holds that the tax mentioned can be assessed against and collected of every teamster or wagoner employed by any person, firm, or corporation, who, before employing such teamsters or wagoners, has itself paid said occupation tax. We do not believe that such construction was within the legislative intent, nor that it is within either the letter or spirit of the law. In construing the law we do not think any advantage should be taken of the technical meaning of the word "firm," as contradistinguished from "company" or "corporation." None has been claimed for it in this case by the Assistant Attorney-General, and, in our opinion, in so far as this case is concerned, the word "firm" can be held to embrace, or at all events, it is properly construed as interchangeable with "company" or "corporation."

The Wrought Iron Range Company has paid its State tax and its county tax in Travis County; it is a firm or company, and it has paid said tax in order that it may engage in peddling "Wrought Iron Ranges over Travis County." The law does not specify or limit the number of agents or wagons it shall employ in doing this. Having paid the tax, the matter of the number of agents, wagoners, or teamsters it shall employ, and the number of wagons it shall use to do the hauling and peddling, is entirely discretionary with said firm or company. Whenever these agents go out peddling the ranges they go as agents and employes of the firm or company, and not as individual peddlers; and whenever they make a sale, the sale is for the company and not the individual agent. The maxim, "*Qui facit per alium, facit per se,*" applies.

Our conclusion of the matter is that the applicant herein is illegally restrained of his liberty under the facts submitted to us in the agreed statement embraced in the record. Wherefore, the complaint and prosecution under which he was arrested is dismissed, and he is hereby released and discharged from further custody and restraint on account of or by virtue of the same, and restored to his liberty.

*Ordered accordingly.*

Willson, J., concurs in the opinion in so far as it construes, but expresses no opinion as to the constitutionality of the statute.