## Wytheville.

STUART'S EXECUTORS V. THE BOARD OF SINKING FUND
COMMISSIONERS.

June 13, 1918.

1. STATUTES—*Title—Waiver of Statute of Limitations.*—The title of
the act of March 12, 1912 (Acts 1912, page 292, chapter 144),
providing for the presentation to the board of sinking fund
commissioners for funding of any bonds, coupons or other
obligations on which it is claimed that the Commonwealth of
Virginia is liable by reason of having guaranteed the payment
of the principal sum or interest, is not defective, and insuffi-
cient because no reference therein was made to the waiver of
the statute of limitations by the State contained in the body
of the act.

2. CONSTITUTIONAL LAW—*Delegation of Power by Legislature.*—The
legislature cannot delegate its power to make law, but it can
make a law to delegate a power to determine some fact or state
of things upon which the law makes or intends to make its own
action depend. To deny this would be to stop the wheels of
government. There are many things upon which wise and
useful legislation must depend which cannot be known to the
law making power and must, therefore, be a subject of inquiry
and determination outside of the halls of legislation.

3. CONSTITUTIONAL LAW—*Delegation of Power by Legislature—Act
of March 12, 1912.*—The act of March 12, 1912, providing for
the presentation to the board of sinking fund commissioners
for funding of any bonds, coupons or other obligations on
which it is claimed that the Commonwealth of Virginia is
liable by reason of having guaranteed the payment of the
principal sum or interest, waived the statute of limitations,
subject only to the existence of certain facts and circumstances
peculiar to the cases that might arise, and the provisions of
the statute in this respect are not unconstitutional, as the
delegation of legislative and judicial functions to an adminis-
trative body, the board of sinking fund commissioners.

4. CONSTITUTIONAL LAW—*Refunding Bonds—Unused Bonds.*—The
act of March 12, 1912 (Acts 1912, page 292), is not invalid
because it proposes to fund the bonds in question by the use of

a part of certain State bonds authorized by the act of February 20, 1892 (Acts 1891-2, page 533), for the settlement of the public debt of Virginia not funded under previous acts. The funding bonds thus provided for have not as yet been called for or used, and there is no reason why the State may not apply these unused assets to the present purpose.

Appeal from a decree of the Circuit Court of city of Richmond. Decree for defendants. Petitioners appeal.

*Reversed.*

The opinion states the case.

*W. D. Cardwell,* for the appellants.

*J. D. Hank, Jr., Attorney-General,* and *Leon M. Bazile, Assistant Attorney-General,* for the appellee.

KELLY, J., delivered the opinion of the court.

By an act of the General Assembly, approved March 12, 1912 (Acts 1912, p. 292), it was provided that if at any time within two years from that date "there should be presented to the board of sinking fund commissioners any bonds, coupons or other obligations on which it is claimed that the Commonwealth of Virginia is liable by reason of having guaranteed the payment of the principal sum or interest thereon, in whole or in part (section 3), and the board should refuse to fund the same in the manner thereinafter set out, then it should be lawful for the holders of such obligations to file a petition against the board in the Circuit Court of the city of Richmond, which court was given jurisdiction to try and determine the question of the Commonweath's liability.

The act prescribed the method of procedure, the general purport of the order to be entered for or against the petitioners, and, if for them, directed that the amount ascertained in their favor should "be fundable as old unfunded

29

obligations under the act approved the 20th of February, 1892."

The provision of the act with which we are here chiefly concerned is as follows: "The proceedings shall be conducted in all respects as chancery causes are conducted, and in accordance with the principles, rules and regulations and methods of procedure, and the said board of sinking fund commissioners in said proceedings shall set up and insist upon all defenses, both legal and equitable, which the Commonwealth would be entitled to insist upon if the proceeding was directly against the Commonwealth: provided, however, that the said commissioners shall not interpose the technical plea of the statute of limitations either as to the principal or interest of said alleged obligations, unless in the judgment of said board of sinking fund commissioners it is proper and necessary to do so to protect the Commonwealth from the payment of an unjust and inequitable demand, for which the Commonwealth might otherwise be held liable; in which event said plea shall be interposed at any time before final decree, but this waiver of the technical plea of the statute of limitations shall not be held or construed as in any way interferring with, affecting, weakening or impairing in any manner whatsoever any other legal or equitable defense which may be interposed by the said board of sinking fund commissioners in defense of said proceeding. * * *"

Pursuant to this act, and within the time thereby prescribed, appellants presented to the sinking fund commissioners certain bonds and coupons alleged to have been guaranteed by the Commonwealth, and requested that the same be funded. The request was refused, and thereupon the appellants filed their petition in the circuit court.

The bonds in question, according to allegations of the petition admitted to be true by the demurrer now before us, were a very small part of a total of $300,000 of obligations

of the Chesapeake and Ohio Canal Company guaranteed by the State of Virginia pursuant to authority and direction of an act of the General Assembly approved March 8, 1847 (Acts 1846-47, chapter 107), and "were purchased by and became the property of the said R. H. Stuart, your petitioners' testator, for valuable consideration, and have been held by the said R. H. Stuart and his estate and are still held by your petitioners."

The petition also contains the following allegation, which we must accept as true upon the demurrer: "The Commonwealth has further recognized its liability by accepting thirteen thousand dollars ($13,000.00) of the said bonds as cash in a settlement made between it and the United States Government in April, 1913, concerning certain claims held by the Commonwealth and the United States Government, respectively, against each other, and has further recognized its liability upon said bonds in the suit of *Virginia* v. *West Virginia*, pending in the Supreme Court of the United States, by not only admitting its liability but insisting that, as the Commonwealth of Virginia was obliged to pay said bonds, West Virginia should bear her proportion of the same."

To this petition the sinking fund commissioners demurred, on the ground, (1) that the act was unconstitutional, and (2) that the guarantee of the Commonwealth upon the particular obligations involved was not absolute, but conditional, and that the petition failed to allege performance of the conditions.

The circuit court sustained the demurrer and dismissed the petition on the constitutional questions raised thereby, and did not pass upon the second proposition. The appellants do not waive the latter in this court, but do not argue it in their brief or cite any authorities in its support. In our opinion, the proposition is not tenable.

The real controversy, in the present status of the case, is

whether the act is constitutional. To sustain its position in this respect, the Commonwealth assigned a number of reasons upon which the court below was asked, and upon which we are now asked, to declare the enactment invalid. Upon a careful consideration, we are of opinion that no sufficient reason has been presented for holding the act unconstitutional, and it does not seem necessary to enter into any protracted discussion of the question.

The order of the court sustaining the demurrer does not indicate the grounds upon which the act was held unconstitutional. In the petition for appeal it is alleged that these grounds, as "stated orally from the bench, were, principally, first, that the title of the act was defective and insufficient because no reference therein was made to waiver of the statute of limitations, and, second, because the act was a special act and sought to delegate to a board the right and duty of determining whether the statute of limitations should be pleaded in the case or not."

The principles involved in the first of these grounds have received frequent and recent consideration from this court, and we deem it sufficient to say that, in our opinion, the act cannot be successfully assailed on account of any infirmity in the title.

The constitutional questions which appear to be most seriously relied upon call the act in question on the ground that it delegates to an administrative body, the board of sinking fund commissioners, legislative and judicial functions. The contention is that it was not competent for the legislature to leave it to the board to determine in given cases the justice and equity of the demands asserted under the statute, but should either have determined that question for itself or have left it to the court upon which the jurisdiction to hear and determine the cause was conferred. In our view of the statute, however, the legislature has in terms waived the statute of limitations, subject only to the exist-

ence of certain facts and circumstances peculiar to the cases that might arise, and the provisions of the statute in this respect seem to us practical, just and lawful. The case appears to fall within the reasoning of the opinion in *Locke's Appeal*, 72 Pa. 491, 13 Am. Rep. 716, in which the Supreme Court of Pennsylvania uses the following language: "The legislature cannot delegate its power to make law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power and must, therefore, be a subject of inquiry and determination outside of the halls of legislation."

The argument of the appellees that the act is not valid because it proposes to fund the bonds in question by the use of a part of certain State bonds authorized by the act of February 20, 1892 (Acts 1891-2, page 533), for the settlement of the public debt of Virginia not funded under previous acts, possesses no real merit. It is conceded that the funding bonds thus provided for have not as yet been called for or used, and we can see no reason why the State may not apply these unused assets to the present purpose. The period within which the funding boards provided for in the act of 1892 were to be available for the purpose therein specified has long since expired. Unwilling to avail itself of the limitation, the Commonwealth has repeatedly extended the time, and as a result the funding provisions of the act of 1892 are still open to the holders of any of the old unfunded obligations embraced therein. It would seem highly probable that unless there are further extensions of time made by the General Assembly, a large amount of these old funding bonds will not be required for the purposes specified in the original act. Further extensions will

doubtless be made, but we think the General Assembly may be depended upon to enact any further legislation which may be necessary to meet the situation, if the claims asserted in the petition herein shall be ordered funded in the further proceedings to be had herein.

We are of opinion that the act is constitutional, and that the court erred in holding to the contrary.

It is perhaps pertinent to observe that the portion of the said act of March 12, 1912, which provided for the adjudication and funding of the obligations involved in this case, has been repealed, and had been repealed at the time when the court passed upon the demurrer. The only point made in the argument and briefs before us with regard to this repeal was the manifestly correct assertion, that it answers the contention of the Commonwealth concerning the far-reaching consequences of the decision in this case as to the amount of claims that might be presented and ordered funded as against the Commonwealth. The claims here involved, amounting to about $8,000, are the only ones which can possibly be validated under the act. We will express no opinion as to what effect, if any, the repeal of the act may have upon the further proceedings in this cause. This question not having been raised before us, we deem it best to content ourselves by an order upholding the constitutionality of the act, overruling the demurrer upon this ground, and remanding the cause to the lower court for further proceedings. In such proceedings the commissioners, regardless of any question as to the effect of the repeal of the act upon the rights of the parties herein, will of course still have the right and power to plead the statute of limitation if they regard the demands of the petitioners as being unjust or inequitable.

*Reversed.*