# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## SOUTHERN RAILWAY COMPANY V. COMMONWEALTH OF VIRGINIA.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*Thomas B. Gay, S. R. Prince, Sidney S. Alderman* and *Henry L. Walker,* for the plaintiff in error.

*J. F. Hall,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

This is a proceeding in which the Commonwealth of Virginia is endeavoring to force the Southern Railway Company to build an overhead crossing in Mecklenburg county at a point where State highway No. 12 now crosses the railway right of way at grade.

On January 7, 1931, the State Highway Commissioner, acting under statutory authority, notified the railway company that in his opinion public safety and convenience required the elimination of this grade crossing. The notice set out that plans for necessary work had been submitted to him by the railway company and by him approved. To that notice the railway company replied on January 20, 1931, and said that the act relied upon was unconstitutional and void. It declined to comply with the commissioner's request. After the receipt of this refusal he filed a complaint with the State Corporation Commission, in which he invoked its power to compel the performance by the railway company of the duty imposed upon it by the notice. That complaint was duly docketed, and an order was entered requiring the defendant to appear and answer on March 30, 1931.

The defendant did appear and demurred. The demurrer challenged the authority of the State Highway Commissioner and of the State Corporation Commission, on the ground that the statute relied upon was unconstitutional under the due process clause of article 1, section 11, of the Constitution of Virginia, and under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

This demurrer was duly considered by the Commission, which in an able opinion prepared by Honorable William Meade Fletcher, one of its members, reached the conclusion that the challenged statute was a proper exercise of power by the State, and on March 8, 1932, directed the railway company to proceed with the construction of this overhead crossing in accordance with plans approved. It is from that order that this appeal has been taken.

Road building in Virginia, as at present prosecuted, is a comparatively new undertaking. In section 39 of chapter 4, Acts 1902-3-4, the latter part of which was the same as section 3974, Michie's Code 1930, we find in substance these provisions: The board of supervisors in any county in which there is a grade crossing, may, when in its opinion elimination is necessary for the improvement of the county road, petition in writing the railway company to make the necessary change. Should that company be unwilling to comply, the board may then, by another petition, apply to the State Corporation Commission for relief. The case made is to be heard as other petitions are heard; all done, of course, on notice.

At the same time, section 38 of chapter 4, Acts 1902-3-4, which was the same as section 3972, Michie's Code 1930, declared in terms that the policy of the State was to eliminate all grade crossings wherever reasonably practicable.

This court, in *Southern Railway Co.* v. *Commonwealth,* 124 Va. 36, 97 S. E. 343, said that the State Corporation Commission was vested with ample power in the premises, but that it should be exercised with caution, and that such changes should not be ordered except for cogent reasons.

At that time our State highway system, as now constituted, had not been devised. In 1918 a "State highway system" was created. Acts 1918, page 9, chapter 10. Under increased traffic which had followed its construction, grade crossings have become increasingly dangerous.

The idea that notice, if not necessary, was at least proper, continued. Acts 1920, page 411, chapter 297, authorizes the roads to make changes at crossings on their own initiative and according to their own plan, but boards of supervisors and the State Highway Commissioner are given the right to appeal to the State Corporation Commission to prevent the carrying out of such contemplated changes. That appeal was upon notice.

In 1924 (Acts 1924, page 146, chapter 120), the power challenged was for the first time conferred. With changes

not here material it reappears in the Acts of 1930, page 74, chapter 62; Michie's Code 1930, section 3974-a. As amended it now reads:

"* * * whenever the elimination of an existing crossing at grade of a State road by a railroad, or a railroad by a State road, and the substitution therefor of an overhead or underpass crossing becomes, in the opinion of the State Highway Commissioner, necessary for the public safety or convenience, or whenever, in the opinion of the State Highway Commissioner, the public safety and convenience requires that an overhead or underpass crossing of a railroad and a State highway shall be widened, strengthened, remodeled, redesigned, relocated or replaced, or a new or improved structure provided in lieu thereof, the State Highway Commissioner shall notify in writing the railroad company whose track is to be crossed or upon which the existing crossing at grade, or the overhead or underpass crossing is, as the case may be, stating particularly the point at which the crossing is desired or the existing grade crossing is to be eliminated, or the overhead or underpass is to be widened, strengthened, remodeled, redesigned, relocated or replaced, or a new or improved structure provided in lieu thereof, as the case may be, and that the public safety or convenience requires that the crossing be made either above or beneath the tracks of said railroad, or that the existing grade crossing should be eliminated or abolished, and a crossing constructed above or beneath the tracks of said railroad, or that the overhead or underpass crossing be widened, strengthened, remodeled, redesigned, relocated or replaced, or a new or improved structure provided in lieu thereof, as the case may be, and shall submit to said railroad company plans," etc.

■ Under it the commissioner was to submit to the railroad company plans for the proposed work. If they were not satisfactory, the road might, in lieu thereof, submit its own plans. Should an agreement not be reached, the controversy is referred to the State Corporation Commis-

sion, whose duty it is to either approve one of the plans submitted, or to substitute its own, one-half of the cost of this work to be paid by the road and one-half by the State.

The Highway Commission is an administrative department of the State, charged with powers and duties defined by statute, among which is police power (Code 1930, sections 1969a-1969p)—a power authorized and confirmed by our Constitution.

"* * * the exercise of the police power of the State shall never be abridged, nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the State." Va. Const., section 159.

The fourteenth amendment of the Federal Constitution does not take from the State these powers to police which were reserved at the time the Constitution was adopted.

"But this court has declared, upon full consideration, in *Barbier* v. *Connolly*, 113 U. S. 27, 31 [5 S. Ct. 357, 28 L. Ed. 923], that the fourteenth amendment had no such effect. After observing, among other things, that that amendment forbade the arbitrary deprivation of life or liberty, and the arbitrary spoliation of property, and secured equal protection to all under like circumstances, in respect as well to their personal and civil rights as to their acquisition and enjoyment of property, the court said: 'But neither the amendment—broad and comprehensive as it is —nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity.' " *Mugler* v. *Kansas*, 123 U. S. 623, 8 S. Ct. 273, 298, 31 L. Ed. 205.

Of course, it is subject to constitutional limitations.

"Undoubtedly the State, when providing, by legislation, for the protection of the public health, the public morals, or the public safety, is subject to the paramount authority of the Constitution of the United States, and may not violate rights secured or guaranteed by that instrument, or interfere with the execution of the powers confided to the general government." *Mugler* v. *Kansas, supra.*

"It cannot be supposed that the States intended, by adopting that amendment (the fourteenth amendment) to impose restraints upon the exercise of their powers for the protection of the safety, health or morals of the community." *Idem.*

No inclusive workable definition of "police power" has been or can be formulated. New conditions constantly arise and must be met as they come (*Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 28 S. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560), subject always to constitutional limitation.

Impossible burdens may be imposed. Dangerous crossings may be abolished at the entire expense of a railroad, even though it may be bankrupted in the prosecution of the work. *Erie R. R. Co.* v. *Public Util. Comm'rs,* 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322.

When we come to deal with statutes every possible presumption is to be indulged in favor of their validity. *Sinking Fund Cases,* 99 U. S. 700, 727, 25 L. Ed. 496, 504; *Farmers', etc., Insurance Association* v. *Horton,* 157 Va. 114, 160 S. E. 315.

It is well to bear in mind just what we have to decide. The issue here is narrow. These statements of it are made on behalf of the railway company:

"It will be noted that the demurrer raised no question of the substantive power of the State. Admittedly the State has the substantive police power to make reasonable requirements enforcing uncompensated obedience by railroads to promote public safety and convenience, as by contributing their own property to the construction of grade crossing

elimination structures reasonably necessary to protect the public. Admittedly the States have the substantive power, subject to the restrictions of the Constitutions and of Federal law, as Mr. Justice Holmes said in *Erie Railway Co.* v. *Public Utility Commissioners*, 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322, to 'be so foolish as to kill the goose that lays golden eggs for them.' But they must follow primary, procedural due process of law in doing so. The goose may not be killed without notice and hearing, without right to contest and plead for its life. It may not be killed by *ex parte* fiat or ukase of an administrative official, made in his own arbitrary discretion, final and irrevocable in its nature and subject to no appeal or judicial review on the merits.

\* \* \* \* \* \* \* \* \*

"As heretofore stated, appellant in no wise questions the substantive power of the State to make reasonable regulations under its police power, requiring railroads to eliminate grade crossings at their own expense, in whole or in part, provided such regulations are made in compliance with constitutional requirements as to primary or procedural due process of law. The law in this regard is too well settled to be the subject of question.

\* \* \* \* \* \* \* \* \*

"It is true that the legislature may make a legislative determination, whether under the police power, the tax power, or any other power, without notice and hearing to the persons affected."

From this we see that the power of the State, acting through its legislature, to order this change in grade is not questioned. Power is conceded but procedure is protested.

It is contended that the legislature has not acted at all but has undertaken to delegate its legislative powers to another. Of course the power to legislate cannot be delegated. The legislature is the source from which legislation must come. But if the act in judgment sufficiently indicates legislative purpose, and has merely left administrative details to some agent, this assignment is without merit. If it

has undertaken to delegate to this agent legislative power, then this objection is well taken. *Stuart's Ex'rs* v. *Sinking Fund Comm'rs*, 123 Va. 224, 96 S. E. 239; *Eubank* v. *Richmond*, 226 U. S. 137, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192. In the *Eubank Case* the right to act was given a group of private citizens. Here it is vested in an administrative agent who has statutory supervision of all the highways of the Commonwealth. The legislature does not sit continuously, and must, of necessity, work with and through some such instrumentality.

In *Chicago, etc., Railroad* v. *Nebraska*, 170 U. S. 77, 18 S. Ct. 513, 521, 42 L. Ed. 948, that court, quoting with approval from *Health Department* v. *Trinity Church*, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, said: "The legislature has power and has exercised it in countless instances to enact general laws upon the subject of the public health or safety without providing that the parties who are to be affected by those laws shall first be heard before they shall take effect in a particular case. * * * The fact that the legislature has chosen to delegate a certain portion of its power to the board of health, * * * would not alter the principle, nor would it be necessary to provide that the board should give notice and afford a hearing to the owner before it made such order. * * * Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbance. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffer injury, it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

The closing observation of Judge Peckham bears with force upon the situation here. One crossing accident might cost the road more than the entire expenditure made necessary by this change in grade.

In *Union Bridge Co.* v. *United States,* 204 U. S. 364, 27 S. Ct. 367, 373, 51 L. Ed. 523, Mr. Justice Harlan, quoting from *Moers* v. *City of Reading,* 21 Pa. St. 188, 202, said: "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law."

He then cites with approval this statement from *Locke's Appeal,* 72 Pa. St. 491, 498, 13 Am. Rep. 716: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government."

The same general principle appears in *Breiholz* v. *Board of Sup'rs of Pocahontas County, Iowa,* 257 U. S. 118, 42 S. Ct. 13, 14, 66 L. Ed. 159: "The only possible source of objection remaining is the committing to the board of supervisors the power to determine, without notice and hearing, when repairs are necessary (to a drainage system) and the extent of them. But these are details of State administration with which the Federal authority will not interfere, except possibly to prevent confiscation * * *."

In *Bragg* v. *Weaver,* 251 U. S. 57, 58, 40 S. Ct. 62, 63, 64 L. Ed. 135, the court said: "Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the State may designate. They are legislative questions no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment."

We might buttress this principle by a host of citations from State courts but it is not necessary. Our court is of the same opinion.

In *Stuart's Ex'rs* v. *Sinking Fund Commissioners, supra,* the statement in *Locke's Appeal, supra,* was expressly approved, and it was held that the legislature might delegate to an administrative board power to determine facts and things upon which action under its statute was to depend. To the same effect see *Taylor* v. *Smith,* 140 Va. 217, 124 S. E. 259, 263, where Judge Burks, after citing many cases, said: "We are of opinion that a city may, in the execution of its police power, invest its administrative and executive officers with a reasonable discretion in the performance of duties devolved upon them to that end, whenever it is necessary for the safety and welfare of the public. Such a discretion is neither arbitrary nor capricious."

In *Thompson* v. *Smith,* 155 Va. 367, 154 S. E. 579, 584, Mr. Justice Epes, in discussing an ordinance of the city of Lynchburg, has reached the same conclusion: "This does not mean, however, that no discretion can be left to administrative officers in administering the law. Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms. Without this power legislation would become either oppressive or inefficient. There would be confusion in the laws, and in an effort to detail and particularize, the law would miss sufficiency both in provision and detail. *Block* v. *Chicago,* 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219; *Mutual Film Corp.* v. *Ohio Indus. Comm.,* 236 U. S. 239, 35 S. Ct. 387, 59 L. Ed. 552, Ann. Cas. 1916-C, 296. This is particularly true where the discretion to be exercised by administrative officers relates to police regulations designed to protect the public morals, health, safety and general welfare."

There an ordinance, dealing with the drivers of motor vehicles, said in part: "The chief of police is authorized and directed to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city * * *." It was held that legislation

must declare the policy of the law and fix the legal principles which are to govern its administration. When it was said that the chief of police might revoke the permit of any driver who in his opinion became unfit to drive, no principle to control his action is suggested by the ordinance. In this it differs from the statute in judgment. Here the Highway Commissioner must believe that public safety or convenience necessitates the change, and this belief must rest upon the facts. Plainly the statute could not undertake to say what made a crossing unsafe; that is a fact to be ascertained by its agent, and, when ascertained, it becomes the commissioner's duty to do what the statute told him to do. Grade crossings are to be eliminated "wherever reasonably practicable," and particularly where they are unsafe. The duty of ascertaining facts calling for action is placed with the supervisor of roads. This statutory policy and supervision is confirmed by its own Constitution, which, in section 164, declares that, "The right of the Commonwealth, through such instrumentalities as it may select, to prescribe and define the public duties of all common carriers and public service corporations, to regulate and control them in the performance of their public duties, and to fix and limit their charges therefor shall never be surrendered or abridged."

Names are unimportant and it matters little whether these governmental agencies be called executive or administrative. However designated, it is entirely proper to delegate to them the power to ascertain the existence of some state of facts upon which the operation of the law by its terms depends. *People* v. *Joyce*, 246 Ill. 124, 92 N. E. 607, 20 Ann. Cas. 472. Here the necessities for it are admitted by the demurrer.

Was notice to the railway company necessary before the commissioner undertook to ascertain the character of the crossing? It was not unless property in some proper sense was to be taken.

In *New Orleans Public Service* v. *City of New Orleans*, 281 U. S. 682, 50 S. Ct. 449, 450, 74 L. Ed. 1115, the court said: "The value of the viaduct to be removed, the large expenditure involved for construction of the crossings in its place, and the dangers incident to their use constitute the sole basis of fact on which the ordinance is assailed. It is elementary that enforcement of uncompensated obedience to a regulation passed in the legitimate exertion of the police power is not a taking of property without due process of law."

Undoubtedly property may be destroyed. Malaga grapes have value, but since they may harbor pests harmful to our vineyards their importation is prohibited, and if brought in may be destroyed without notice and without redress to their owner. Money must be spent in cleaning ice and snow from sidewalks, yet an ordinance that directs that it be done by lot owners is valid. *Goddard, Petitioner, etc.,* 16 Pick. (Mass.) 504, 28 Am. Dec. 259. No one can contend that this lot owner must be served with notice.

While it costs more to make a crossing safe than it does a sidewalk, there is no difference in principle, unless it be that the State has more control over a railway than it has over a householder.

A statute in West Virginia authorized the State entomologist to ascertain, in certain circumstances, if cedar trees were infested with apple rust. If found to be so infested, he might require the owner to destroy them. Upon the owner's failure to act, he might. The court, in sustaining the statute, said that a State might authorize a summary abatement of the nuisance. *Lemon* v. *Rumsey,* 108 W. Va. 242, 150 S. E. 725.

In *Commonwealth* v. *Roberts,* 155 Mass. 281, 29 N. E. 522, 16 L. R. A. 400, an act required all buildings used for a designated purpose to be supplied with sufficient water-closet connections. It was held, although there was no provision for notice or hearing, that the act was a valid exercise of the police power, and applicable to buildings erected be-

fore its enactment as well as to those subsequently constructed. *Health Department* v. *Trinity Church,* 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579; *Chicago, etc., Ry.* v. *Nebraska, supra.*

A house infested by plague-stricken rats may be destroyed. In short, the State, in the exercise of its police power, acting within reason, may take summary action to protect the health or safety of its citizens although such action may necessitate the expenditure of money or the destruction of property.

▇▇▇ It is conceivable that under change in traffic conditions, a crossing, once safe, may become a death trap. On the other hand, notwithstanding the fact that the State is proceeding under police power, property cannot be taken nor expenditures ordered merely to meet demands of convenience, as is illustrated by the case of *Washington ex rel. Oregon R. & N. Co.* v. *Fairchild,* 224 U. S. 510, 32 S. Ct. 535, 56 L. Ed. 863, where, for economic reasons, the construction of a spur track was ordered.

In the protection of the people large discretion must be given to the legislature.

"Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." *Missouri, etc., Ry. Co.* v. *May,* 194 U. S. 267, 24 S. Ct. 638, 639, 48 L. Ed. 971.

▇▇▇ The railroad is not without remedy. Should the power vested in the Highway Commissioner be arbitrarily exercised, equity's long arm will stay his hand. *Jacobson* v. *Massachusetts,* 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; *New York* v. *Van De Carr,* 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305; *Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405.

This case has been ably argued. The opinion of Commissioner Fletcher is comprehensive and convincing. Space

and time prevent nor is it necessary to examine all the cases to which our attention has been invited, for the issue, as we have seen, is narrow.

To summarize our conclusions, we are of opinion that the State may delegate to an administrative officer or board power to determine facts and things upon which action under its statute depends. This is not a delegation of power to legislate, and where the safety of its citizens is at stake, it may, without notice, take such action as is reasonably necessary for their protection. If action is arbitrary, control is vested in the courts.

The order appealed from should be affirmed, and it is so ordered.

*Affirmed.*

CAMPBELL, C. J., and EPES, J., dissenting.