# Wytheville

### H. L. CARPEL OF RICHMOND, INC. v. THE CITY OF RICHMOND.

June 14, 1934.

Present, All the Justices.

834

The opinion states the case.

*Leon M. Bazile* and *Alfred J. Kirsh,* for the plaintiff in error.

*James E. Cannon, W. W. Martin* and *Henry R. Miller, Jr.,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This summons was executed on August 10, 1932:

"Summon H. L. Carpel, 1704 Altamont avenue, to appear before me or some other justice of the peace of said city, at the police justice's court in the city hall, on the 10th day of August, 1932, at the hour 9:30 o'clock A. M., to show cause if any_____can why a fine of_____dollars should not be imposed on_____for violation of ordinance of said city, section 124½, chapter 10, Richmond City Code, peddling on the streets of the city of Richmond without the proper license.

"And be you then there to certify what you have done in the execution thereof.

"Given under my hand and seal in said city this 1st day of August, 1932.

"T. Gray Haddon,
"Police Justice.   (Seal)."

In due course it came on to be heard and on August 24, 1932, the defendant (plaintiff in error) was found guilty and there was imposed upon him a fine of $5, costs $1.   He appealed to the Hustings Court of the city of Richmond, which on the 28th of November, 1932, affirmed the judgment of the police justice, and that judgment is now before us on a writ of error.

The defendant contends that the ordinance under which this fine is imposed is unconstitutional and void as being in conflict with section 1 of article XIV of the amendments to the Federal Constitution and sections 1 and 63 and 64 of the Constitution of Virginia.

This is the ordinance under which the city claims:

"124½.  Peddlers selling or offering to sell to licensed dealers or retailers.—(a) Every person, firm or corporation, other than a distributor or vendor of motor vehicle fuels and petroleum products, a farmer, a dealer in forest products, a producer or manufacturer, who or which shall sell and deliver at the same time, or offer to sell, in the city of Richmond, other than at a definite place of business, goods, wares, manufactured products or merchandise to licensed dealers or retailers, shall pay a license tax of $200 for each vehicle so used in the conduct of said business, the whole of which license tax shall be paid in one sum at the time the license is issued and shall not be prorated or transferred.

"(b) Every vehicle used in the business licensed by this section shall have conspicuously displayed thereon the name of the person, firm or corporation using the same, together with his or its postoffice address and the license provided for in this section shall at all times be conspicuously displayed in each such vehicle."

Pertinent facts are set forth in an agreement which reads:

## "Agreed Statement of Facts.

"On behalf of the city of Richmond, acting through its city attorney, and on behalf of H. L. Carpel, of Richmond, Incorporated, acting through Kirsh and Bazile, its attorneys, it is agreed that this case shall be submitted to the court on the following agreed statement of facts:

"H. L. Carpel of Richmond, Incorporated, is a Virginia corporation. The corporation is licensed by the State and by the city as a merchant with its place of business at No. 1704 Altamont avenue, Richmond, Virginia. It pays to the city of Richmond a merchant's license tax of three hundred and fifty-seven ($357) dollars per year. It pays a State merchant's tax of three hundred seven dollars and fourteen cents (307.14) per year. It pays automobile license taxes to the Commonwealth of Virginia and to the city of Richmond in the amount of three hundred fifty-one dollars and thirty cents ($351.30) and it pays real estate taxes to the city of Richmond to the amount of seven hundred twenty-seven dollars and fifty-two cents ($727.52) per year.

"H. L. Carpel of Richmond, Incorporated, is a wholesale merchant engaged in the business of selling to retail merchants. All of the articles sold by it consist of food stuffs of a perishable nature, principally cheese, biscuits and crackers, cakes, potato chips, mayonnaise and other dressings, spaghetti and macaroni products, etc.

"In the city of Richmond the corporation has been in the habit of selling to retail merchants in the following ways:

"*First:* It delivers goods from its store to retail merchants when and as ordered over the telephone or otherwise.

"*Second:* It has also made deliveries of goods to retail merchants from motor vehicles operated by it, the deliveries being made at the same time that the order is re-

ceived; that is, it has sold and delivered at the same time in the city of Richmond at the place of business of licensed retail merchants its goods to such retail merchants.

"It is further agreed that H. L. Carpel of Richmond, Incorporated, operates four (4) trucks in the carrying on of the business above set out.

"It is further agreed that this prosecution is instituted for failure of H. L. Carpel of Richmond, Incorporated, to obtain the license prescribed by section 124½ of chapter 10 of the Richmond City Code as amended to January 1, 1932, and that H. L. Carpel of Richmond, Incorporated, has not obtained the licenses prescribed by that section."

The ordinance assailed is authorized by section 192a of the Tax Code (Code 1930, appendix, p. 2182).

■ The right to assess peddlers with a license tax, so long as it is done in good faith, is perfectly plain. *Myer's Case,* 92 Va. 809, 23 S. E. 915, 31 L. R. A. 379. It rests both in the power to tax and in the police power.

The statute tells us who are peddlers.

■ "Any person who shall carry from place to place, any goods, wares or merchandise, and offer to sell or barter the same, or actually sell or barter the same, shall be deemed to be a peddler, * * *" Tax Code, section 192.

■ The right to classify and to exempt is widely recognized both in this country and in England.

"These immunities have been recognized for many years. By the statute of 50 Geo. III, ch. 41, section 23, real workers and makers of goods within Great Britain were exempt from the payment of the license which was imposed upon hawkers and peddlers. 1 Barn. & Adol. 279; 10 Barn. & C. 66. In many if not in most of the American States, these immunities are granted to mechanics and farmers selling their own products, and the power is not questioned." *People* v. *Sawyer,* 106 Mich. 428, 64 N. W. 333.

This power has been exercised by our legislature certainly for more than a century.

"No hawker or peddler shall offer for sale or barter in

any county or corporation within this Commonwealth, any tin or pewter ware, or any other goods, wares or merchandise, not of his or her manufacture within the Commonwealth; unless such person or persons shall have previously paid the tax imposed by law, and obtained a license therefor: * * *" Supplement to the Revised Code, p. 327 (act passed February 24, 1832).

"No person shall, without a license, act as a hawker or peddler in selling or trading in goods, wares, merchandise or other articles, except cotton yarns, and except articles manufactured by the seller in this State, or provisions or agricultural commodities grown or produced in the United States." Code 1849, ch. 38, p. 210, section 30.

"The specific license tax on every person, for the privilege of peddling and bartering, shall be fifty dollars; but no resident mechanic or manufacturer, except a manufacturer of ardent spirits or malt liquors, shall be taxed for the privilege of peddling or bartering articles manufactured by himself in this State." Code 1873, p. 355, section 22.

By act approved May 20, 1903, Acts of Assembly 1902-3-4, ch. 313, p. 533, it is declared that, "Nothing under this or the preceding section shall be construed to require of any farmer a peddler's license for the privilege of selling or peddling farm products, wood, or charcoal grown or produced by him."

Other instances might be added but these are enough to show that a license has never been required for the sale of every conceivable article.

As we shall see, this case turns upon classification, and classification, unless essentially arbitrary, rests in the judgment of the legislature.

*State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, is a case in which a license tax on chain stores was involved. The court said: "The power of taxation is fundamental to the very existence of the govern-

ment of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations."

■ "One who assails the classification of such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160.

In *Louis K. Liggett Co.* v. *Lee,* 288 U. S. 517, 53 S. Ct. 481, 483, 77 L. Ed. 929, 85 A. L. R. 699, it was said that "the legislature may make the difference in method and character of the business the basis of classification for taxation." See, also, *Richmond Linen Supply Co.* v. *City of Lynchburg,* 160 Va. 644, 169 S. E. 554; *Bryce* v. *Gillespie,* 160 Va. 137, 168 S. E. 653; *Farmers', etc., Ins. Ass'n* v. *Horton,* 157 Va. 114, 160 S. E. 315; *Marlin's Ex'rs* v. *Commonwealth,* 126 Va. 603, 102 S. E. 77, 724; *Polglaise* v. *Commonwealth,* 114 Va. 850, 76 S. E. 897.

■ Where a statute is susceptible of more than one interpretation, that which sustains its constitutionality should be adopted. *Toombs* v. *Citizens' Bank of Waynesboro,* 281 U. S. 643, 50 S. Ct. 434, 74 L. Ed. 1088; *Ann Arbor R. Co.* v. *United States,* 281 U. S. 658, 50 S. Ct. 444, 74 L. Ed. 1098.

This principle in express terms our Tax Code recognizes. In section 2 it is said:

■ "The provisions of the Tax Code of Virginia and of all tax and revenue statutes shall always be so construed and so restricted in their application as not to conflict with any of the provisions of the Constitution of the United States or of the Commonwealth of Virginia, and as if the necessary limitations upon their interpretation had been expressed in each case." Code 1930, appendix, p. 2131.

Another rule of construction also is to be remembered. A literal interpretation is to be avoided when possible if it is plainly counter to the legislative purpose and leads to unreasonable or absurd consequences. *Buzzard* v. *Commonwealth*, 134 Va. 641, 114 S. E. 664; *Church of the Holy Trinity* v. *United States*, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; *Tillinghast* v. *Tillinghast*, 58 App. D. C. 107, 25 Fed. (2d) 531.

Of course we sustain the constitutionality of statutes when it is possible to do so. If courts were alert to set aside legislation, balance of powers would be at an end and our theory of their division would come to naught.

With these principles in mind let us look at those exemptions which it is contended are wholly arbitrary and make the ordinance void.

Vendors or distributors of motor vehicle fuels and petroleum products are first named. The character of this business is of recent origin and is brought about by the almost universal use of internal combustion engines. Gasoline which is highly explosive is stored in large quantities in central stations and is distributed from them by trucks of special design. Its method of merchandising is highly specialized and differs in many particulars from those followed in the sale of perishable foodstuffs. As we have seen, "the legislature may make the difference in method and character of the business the basis of classification for taxation."

In *McKenney* v. *City Council of Alexandria*, 147 Va. 157, 136 S. E. 588, the defendant sold gasoline and petroleum products from a filling station. He was assessed with a special license tax. The court was of the opinion that this assessment was valid and that he was not a merchant as that term is ordinarily understood. In other words, it held that the classification adopted by the city was not arbitrary and unconstitutional. To the same effect see *Standard Oil Co.* v. *Fredericksburg*, 105 Va. 82, 52 S. E. 817. In *Southwestern Oil Co.* v. *Texas*, 217 U. S.

114, 30 S. Ct. 496, 54 L. Ed. 688, it was held that a whole-sale dealer in oil may be separately classified and distinguished from a wholesale dealer in other merchandise.

Moreover, Carpel, Inc., is not a dealer in petroleum and its products, but in perishable foodstuffs, and so he has no interest in this exemption and could not be heard to complain even if it were unconstitutional. Before one can ask that a statute be declared unconstitutional, he must show that he has been injured. Until that has been done, it is, so far as he is concerned, but a moot question. *C. & O. Canal Co.* v. *Great Falls P. Co.,* 143 Va. 697, 129 S. E. 731; *Gorieb* v. *Fox,* 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210.

Farmers are not required to take out a license tax.

This statutory exemption must be reasonably construed. It was never intended that the mere fact that one was a farmer carried with it all the privileges of a peddler. Indeed the agricultural products which he may sell must be those which he has produced. Certainly a Virginia farmer could not peddle tea and coffee because they chance to be farm products, but the unfettered right to sell what he produces is everywhere recognized.

In *Corby Baking Co.* v. *Commonwealth,* 123 Va. 10, 96 S. E. 133, the court was called upon to construe section 50 of the Tax Law of 1916 (Acts 1916, ch. 457), and particularly this provision: "All persons who keep a regular place of business, open at all times in regular business hours and at the same place, and who shall elsewhere than at such regular place of business, personally or through their agents, offer for sale or sell, and at the time of such offering for sale deliver goods, wares and merchandise, shall also be deemed peddlers as above, but this section shall not apply to those who sell or offer for sale, in person or by their employees, ice, wood, meats, milk, butter, eggs, poultry, fish, oysters, game, vegetables, fruits, or other family supplies of a perishable nature, grown or produced by them and not purchased by them for sale."

While its constitutionality was not questioned the court

held that the baking company could claim under it and that the exemption as to it was valid, and the right of farmers to peddle their own products is specifically recognized in *Chambers* v. *City of Roanoke,* 114 Va. 766, 78 S. E. 407.

In unnumbered instances we have held that farmers constitute a class and may be the beneficiaries of special legislation. The Department of Agriculture, experimental farms, the Cedar Rust Law, and certain special exemptions from levy and distress, may be cited as examples. It is one of the major industries of the Commonwealth and has been protected by appropriate legislation whenever such legislation appeared to be wise or necessary.

A dealer in forest products is exempt. This exemption also must be construed in the light of common sense. Plainly one could not peddle filing cabinets because they chanced to be made of wood. But he may sell cord wood, kindling, charcoal, etc., and rustic furniture which he himself has made. Moreover, appellant is not a dealer in forest products.

Producers and manufacturers are ordinarily taxed upon capital employed and so make up a special class, but Carpel, Inc., is not a producer or manufacturer and is not interested in their exemptions.

The constitutionality of statutes is frequently determined by the facts to which they are applied.

In *Snyder* v. *Commonwealth of Massachusetts,* 291 U. S. 97, 54 S. Ct. 330, 336, 78 L. Ed. 531, 90 A. L. R. 575, decided January 8, 1934, Mr. Justice Cardoza cited with approval this statement from *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 289, 42 S. Ct. 106, 108, 66 L. Ed. 239: "A statute may be invalid as applied to one state of facts and yet valid as applied to another."

In the *Snyder Case* the right of a prisoner to be present when a jury was taken to the scene of the crime was under consideration. The court said that occasions might arise in which to deny this privilege would be an outrage.

In other circumstances its denial might be entirely proper;[1] that is to say, the constitutionality of a statute may rest in the facts to which it is applied. A farmer could not peddle without a license tea grown in Ceylon.

Many Federal cases deal with classification.

In *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237, it was held that Pennsylvania might impose a license tax on the mining of anthracite coal. None was put upon bituminous coal.

In *Alaska Fish, etc., Co.* v. *Smith,* 255 U. S. 44, 41 S. Ct. 219, 65 L. Ed. 489, a license tax put upon the oil and fertilizer from herring, but not upon those from other fish, was sustained.

In *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350, a statute which imposed a license tax upon laundry business other than steam laundries, with the proviso that it should not apply to women engaged in that business where not more than two were employed, was sustained. See, also, *Ex parte Crowder* (C.C.) 171 Fed. 250.

In *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, a statute was sustained which put a license tax upon the business of refining sugar but exempted planters who ground and refined their own products.

Chain store cases have already been mentioned. These cases are not conclusive but they do tell us that in such matters wide latitude should be extended to legislative classification.

Statutes of different States dealing with a common subject frequently differ in details. In the following cases it has been held that provisions substantially like ours are arbitrary and void: *Winter* v. *Barrett,* 352 Ill. 441, 186 N. E. 113, 89 A. L. R. 1398; *State* v. *Wagener,* 69 Minn. 206, 72 N. W. 67, 38 L. R. A. 677, 65 Am. St. Rep. 565; *State*

---

[1] For the law on this subject in Virginia, see *Noell* v. *Com.,* 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345.

v. *Whitcom,* 122 Wis. 110, 99 N. W. 468; *Ex parte Taylor,* 35 Nev. 504, 131 Pac. 133; *State* v. *Wright,* 53 Or. 344, 100 Pac. 296, 21 L. R. A. (N.S.) 349. They are, however, against the weight of authority.

In *In re Watson,* 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321, peddlers who sold nursery stock and agricultural products were exempt from a license tax. In *Hays* v. *Commonwealth,* 107 Ky. 655, 55 S. W. 425, 426, those who sold tin ware, agricultural instruments, books, papers, meat, stone ware, etc., were held to be exempt. In *State* v. *Webber,* 214 Mo. 272, 113 S. W. 1054, 15 Ann. Cas. 983, peddlers of pianos, organs, books, maps, and agricultural products were held to be exempt. In *People* v. *Smith,* 147 Mich. 391, 110 N. W. 1102, peddlers of fish, vegetables, farm products and bakers delivering bread were held to be exempt. In *State* v. *Montgomery,* 92 Me. 433, 43 Atl. 13, peddlers of fruit, fruit trees, live animals, brooms, fuel and agricultural products were held to be exempt. In *Ex parte Butin,* 28 Tex. App. 304, 13 S. W. 10, peddlers of clocks, cooking stoves or ranges were exempted. In *Territory* v. *Russell,* 13 N. M. 558, 86 Pac. 551, peddlers of maps, books, fruit, fuel and domestic machinery were exempt from any license tax.

Without undertaking to cite more cases we can say with confidence that the weight of authority is to the effect that classifications like those in judgment are not essentially arbitrary but are within the wide field of legislative discretion.

For reasons indicated we are of the opinion that the judgment complained of should be affirmed, and it is so ordered.

*Affirmed.*