# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

DAVID SURLES AND G. S. THOMAS V. COMMONWEALTH OF
VIRGINIA.

January 9, 1939.

Record No. 2048.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Arthur Rhorer, E. G. Hobbs, Richmond Bond* and *S. H. Bond,* for the plaintiffs in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

These two cases were heard together in the trial court and are being heard together on appeal.

In February, 1938, David Surles and G. S. Thomas were arrested in Gate City, Scott county, on warrants charging them with unlawfully transporting illegal whiskey. The trial justice found each of them guilty, fined each of them $100.00 and directed that they be confined in the county jail for sixty days. Upon appeal heard by consent without the intervention of a jury, these judgments were confirmed by the Circuit Court, which did, however, suspend the jail sentence. Appeal is now to us.

Surles and Thomas came in trucks from North Carolina to Middlesboro, Kentucky. They there purchased from the Middlesboro Wine & Liquor Company, a licensed wholesale liquor house, 99 cases of whiskey, duly stamped. Thomas bought 39 of these cases and loaded them into his truck. They were consigned to his order at Liberty, North Carolina, but were in fact bought for and were being taken to a licensed liquor dealer at that place. Surles bought 60 cases, 30 of which were consigned to M. D. Bennett of Fayetteville, North Carolina, and 30 to L. R. Seago at Rockingham in that State, also licensed liquor dealers.

These defendants, as we have seen, were arrested at Gate City. That town is on a direct route from Middlesboro to the North Carolina homes of the consignees. There was no loitering along the way, and the original cartons in which the whiskey had been shipped had not been tampered with.

The warrants' charges are general, the record is meager, and it is not easy to determine from it just what offenses the Commonwealth claims have been committed. It is plain that there was nothing illegal about the whiskey itself, but as the case develops in argument, it seems that the offense, if any, consists of the failure to designate the route to be traveled while in Virginia. Subsection 49a of Code, section 4675, gives to the Alcoholic Beverage Control Board power to adopt regulations governing the transportation of alcoholic beverages in interstate commerce through Virginia. In pursuance thereof, Order No. 2531, governing such transportation in excess of one gallon, was published. Among other provisions, it declares that there shall accompany it at all times during its transportation a memorandum, signed by the consignor, showing "the route to be traveled by such vehicle while in Virginia and such route must be the most direct route from the consignor's place of business to the place of business of the consignee." For the faithful performance of this and other regulations, the carrier was required to execute a bond in the penalty of $1,000. There was here no such signed memorandum, although the route taken was in fact the direct route.

In the recent case of *Williams* v. *Commonwealth,* 169 Va. 857, 192 S. E. 795, Mr. Justice Gregory has lucidly discussed the statutes and decisions governing the transporting of liquor in interstate commerce, and it would serve no good purpose to restate here what has been well stated there. That case governs this.

In *Martin* v. *Commonwealth,* 126 Va. 715, 100 S. E. 836, Judge Prentis had occasion to comment upon Federal legislation as affecting interstate commerce. His conclusions are well summarized in headnote 2, which reads:

"INTOXICATING LIQUORS — *Interstate Commerce*— *Acts of Congress.* — By the Wilson act (26 U. S. Stat. at L. 313, ch. 728; Compiled Stat., sec. 8738 [27 U. S. C. A., sec. 121]), the Webb-Kenyon act (37 U. S. Stat. at L. 699, ch. 90; Compiled Stat., sec. 8739 [27 U. S. C. A., sec. 122]), and the Reed amendment (39 U. S. Stat. at L. 1069, ch. 162; Compiled Stat. 1918, sec. 8739a [27 U. S. C. A., sec. 1 note]), Congress has withdrawn the protection of the commerce clause of the Constitution from intoxicating liquors which are transported in violation of the laws of a State into such State. None of these acts, however, contain any suggestion that a State law can operate upon intoxicating liquor as the subject of interstate commerce while being transported through such State. This doctrine was recognized by the legislature of Virginia in enacting the prohibition law. That act by express language and clear implication prohibits the introduction of liquor into the State, but does not prohibit its transportation through the State in interstate commerce."

Then came the Eighteenth Amendment, U. S. C. A. Const., which prohibited all dealings, interstate and intrastate, in intoxicating liquors for beverage purposes. This later was superseded by the Twenty-First Amendment, U. S. C. A. Const., which in terms repealed the Eighteenth Amendment and left the situation as it was before national prohibition had been adopted, subject only to this qualification: Congress, under its power over interstate commerce, can no longer authorize the transportation or importation of intoxicating liquors into a State in violation of its law.

■ With the law as it was in *Martin's Case* decided, the transportation of intoxicating liquors through a State is governed by Federal regulations; that into a State by State laws. Whiskey is now a legitimate article of commerce and, save to the extent noted, is entitled to the privileges of merchandise generally.

■ ■ The *Williams Case* holds that transportation permits and the exaction of bonds in interstate shipments are burdens which the State can not impose, and for the same

reason a designation in advance of the route to be traveled is an exercise of power forbidden to the State. The situation would be different were there an abuse of this immunity. Had this truck been found in Richmond, these defendants could not successfully contend that they were engaged in the legitimate transportation of whiskey from Middlesboro to Fayetteville, and had the cartons themselves been tampered with, one might well assume that something more than the transportation of whiskey through Virginia was intended; but there is nothing in the record to indicate bad faith or that this transaction was anything but what it purported to be. It may be true, and doubtless is, that no great burden would have been imposed had these defendants been asked to indicate the route which they would take, but if some farmer in Maine wished to send a truckload of seed potatoes to California, and if statutes like ours were everywhere in force, he would find it burdensome to mark out in advance the route to be traveled; indeed, he might find it impossible.

The judgments appealed from are reversed.

*Reversed and final judgment.*