DUCKWORTH *v.* STATE.

4205                                          148 S. W. 2d 656

Opinion delivered March 10, 1941.

■■■■■■■■

*Cecil Nance* and *Harold R. Ratcliff*, for appellant.

*Jack Holt*, Attorney General, and *Jno. P. Streepey*, Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J. Jim Duckworth was found guilty of transporting alcoholic liquors through Arkansas without having procured a permit from the commissioner of revenues. He was fined $500.[1]

The judgment recites that the cause was heard[2] "upon the stipulations of witnesses' testimony and the argument of counsel." Essentials of the agreed statement are in the margin.[3]

An appeal involving construction of § 14177 of Pope's Digest was before this court in 1939. *Jones* v. *State*, 198

---

[1] The cause originated in the municipal court of Blytheville, where it was alleged that liquor had been transported into the state in violation of § 14177 of Pope's Digest. [Act 109, approved March 16, 1935.] The municipal court assessed a fine of $500. The defendant appealed to circuit court.

[2] A jury was waived.

[3] The state policeman who made the arrest, if called as a witness, would testify that Duckworth was detained December 11, 1940, on Highway No. 61. In the glove compartment of the Chevrolet truck the defendant was driving were found four half pint bottles of liquor, one of which had been opened. It was not full. In the truck were 100 cases of "liquor," upon all of which the federal tax had been paid but the Arkansas tax had not. The truck displayed 1940 Arkansas motor vehicle license plates. License plates issued by the state of Mississippi were found under the floor mat. In Duckworth's possession was an invoice of Royal Distillers Products, Cairo, Illinois, showing sale December 10 of 100 cases of liquor to Jack Spiers, Columbia, Mississippi, for $1,691.25.

It was further agreed that Jack Spiers, if called, would testify that he is in the wholesale whiskey business at "Club Marion," in Columbia, Mississippi. He held a federal wholesale liquor dealer's permit and owned the truck driven by Duckworth. He had sent Duckworth from Columbia to Cairo with instructions to purchase the liquor. None was intended for sale, gift, or other distribution in Arkansas. On cross-examination the witness would testify that the liquor was intended to be sold in Mississippi in violation of the laws of that state. Duckworth and Spiers reside in Mississippi, and neither had a place of business in Arkansas.

Ark. 354, 129 S. W. 2d 249. In that case the defendant was charged with transporting fifty cases of "taxpaid liquor"[4] from Illinois to Oklahoma by way of Arkansas.

In the instant appeal it is insisted that in the Jones Case the right of Arkansas to tax, regulate, or condition interstate shipments was not properly presented.[5] It is also urged that the Jones Case was based upon *Haumschilt* v. *State,* 142 Tenn. 520, 221 S. W. 196, and that the Haumschilt Case has been overruled by the supreme court of Tennessee.[6]

Counsel for appellant say: "One question, and one only, is presented: that is, Does the state have power to regulate a shipment of liquor which is merely passing through Arkansas in interstate commerce?"

Our answer is that the state does have such right.

In *McCanless, Commissioner,* v. *Graham,* (Tennessee Supreme Court), the proceedings were not under the criminal code. The appellant, engaged in interstate transportation of liquors, was detained on a charge that the commodity was contraband. In the Tennessee chancery court it was held that the statutes[7] did not authorize confiscation of such property. The department of finance and taxation had issued a license permitting Graham to transport the liquor. After mentioning that the only act engaged in by Graham "which can in any wise be related to [the Tennessee statutes] was that of transporting intoxicating liquors through dry counties of the state," it was said.

"But, under the stipulation, this was a mere incident of interstate transportation, and if the statutes should be construed so as to prohibit such transportation, they would be void because violative of the commerce clause of the United States constitution. . . . We are further of the opinion, as was the chancellor, that the seizure

[4] The reference is to federal taxes. The Arkansas strip stamps had not been attached.

[5] The constitutional question in the Jones Case was raised and was presented by able counsel.

[6] *George F. McCanless, Commissioner of Finance and Taxation* v. *Grover Graham.* Three other cases involving the same question were consolidated. (146 S. W. 2d 137.)

[7] Chapters 49 and 194 of the Public Acts of 1939.

was illegal because appellee was engaged in interstate commerce."[8]

Consonant with the Tennessee courts, this court has held (Jones v. State) that liquor in interstate transit is not subject to confiscation.

Since we determined in the Jones Case that the act of March 16, 1935 (Pope's Digest, § 14177), ". . . makes it unlawful for any person to ship or transport, or cause to be shipped or transported, into the state of Arkansas, any distilled spirits from points without the state, *without first having obtained a permit from the commissioner of revenues*,[9] but three questions are to be determined here: Is such regulation reasonable in view of the state's problem in dealing with the manufacture, sale, and transportation of liquor? Is it a burden on interstate commerce? Does "into" as used in act 109 mean "into and out of"?

Although in appellant's motion for a new trial it is alleged that application for permission to move the liquor was made of the commissioner of revenues, and refused, the agreed statement contains nothing to this effect. We must assume, therefore, that no such request was made.

Rules of the department of revenues, promulgated by the commissioner under authority of act 109 of 1935 (in effect during all of December, 1940),[10] provide that "It shall be unlawful for any person to ship, transport, cause to be shipped or transported into the state of Arkansas any distilled spirits from *points without the state*[11] without having first obtained a permit from the commissioner of revenues, or his duly authorized agent." This regulation is copied almost *verbatim* from § 5(a) of act 109. It must be conceded that the act is somewhat

[8] In support of this statement the following cases are cited: *United States* v. *Gudger*, 249 U. S. 373, 39 S. Ct. 323, 63 L. ed. 563; *United States* v. *Collins*, 263 Fed. 657; *Whiting* v. *United States*, 263 Fed. 477; *Preyer* v. *United States*, 260 Fed. 157; *Surles* v. *Commonwealth*, 172 Va. 573, 200 S. E. 636.

[9] Italics supplied.

[10] New rules, effective February 3, 1941, have been published.

[11] The italicized words are underscored in the mimeographed regulations.

obscure regarding strictly interstate transportation of liquors; but there is a very definite requirement that before shipments may be brought "into the state" from points "without the state" permission of the commissioner of revenues must be obtained. But, it is argued, this section, and other sections of act 109 dealing with transportation, have reference to liquors brought from without the state intended for intrastate usage; hence, appellant contends, "into" does not mean into and through, but "into and at rest."

*First.*—Other than act 109 there is no statute dealing with transportation in the sense contemplated by that measure. It must be assumed, therefore, that the general assembly intended to cover all requirements, and that the term "into" as used in the act includes shipments entering the state, but consigned to points within or beyond. This construction is contrary to that of some courts dealing with related transactions, and we adhere to such definition only because it is our belief that the general assembly intended it so, although more appropriate language could have been used.[12]

*Second.*—The commissioner's regulation requiring those proposing to transport liquor through Arkansas to procure a permit is not in excess of authority conferred by the legislature.

*Third.*—The state relies upon *Ziffrin, Inc.,* v. *Reeves*[13] to support the commissioner's action, and to sustain the assertion that the regulation does not impose a burden on interstate commerce. In that case it was said by Mr. Justice McReynolds, who wrote the opinion:

"The Twenty-first Amendment[14] sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the commerce

[12] Contra, see *Ryman* v. *Legg*, 176 S. E. 403, 179 Ga. 534; *State* v. *Williams*, 61 S. E. 61, 146 N. C. 618, 17 L. R. A., N. S., 299, 14 Ann. Cas. 562.

[13] Ky. 1939; 60 S. Ct. 163, 308 U. S. 132, 84 L. ed. 128.

[14] "Section 1. The eighteenth article of amendment to the constitution of the United States is hereby repealed. Section 2. The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

clause. Without doubt a state may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Furthermore, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them.''

Facts before the court were that the appellant, an Indiana corporation, had continuously received whiskey from distillers in Kentucky for direct carriage to consignees in Chicago. The Kentucky Alcoholic Beverage Control Law of 1938 restricted the agencies by which whiskey might be transported.[15]

After commenting upon the power of states to prohibit manufacture, sale, and transportation of liquors, and affirming Kentucky's right to condition transportation, the opinion says:

''We cannot accept appellant's contention that because whiskey is intended for transportation beyond the state lines the distiller may disregard the inhibitions of the statute by delivering to one not authorized to receive; that the carrier may set at naught inhibitions and transport contraband with impunity.''

It will be observed that § 2 of the Twenty-first Amendment prohibits the transportation or importation of intoxicating liquors *into* any state, territory, etc., *for delivery or use therein*[16] in violation of the laws of the state.

---

[15] In sum, counsel for the appellant said: "The complaint charges that the control law is unconstitutional because repugnant to the commerce, due process and equal protection clauses of the federal constitution in that, under pain of excessive penalties, it undertakes to prevent an authorized interstate contract carrier from continuing an established business of transporting exports of liquors from Kentucky in interstate commerce exclusively. Also: Intoxicating liquors are legitimate articles of interstate commerce unless federal law has declared otherwise. Interstate commerce includes both importation of property within a state and exportation therefrom. Prior to the Wilson and Webb-Kenyon acts, and the Twenty-first Amendment, the powers of the states over intoxicants in both of these movements were limited by the commerce clause. These enactments relate to importations only. Exports remain, as always, subject to that clause."

[16] Italics supplied.

The agreed statement in the case at bar concedes that the liquor carried by Duckworth was not intended for delivery or use in Arkansas.

It is our view that the Ziffrin Case is not altogether in point with the controversy here. The Ziffrin corporation proposed to transport into Illinois liquors manufactured in Kentucky. The Supreme Court of the United States predicated its holding upon the fact that inasmuch as Kentucky had the right to prohibit the manufacture, transportation, and sale of whiskey, it had, as an incident to its power to prohibit, the right to designate the agencies of transportation, as a class, and to prohibit transportation by any other class. This, it was thought, was not a burden upon interstate commerce. Expressed differently, Illinois had no fundamental right to receive liquors from Kentucky; and lacking that right it could not complain of conditions under which limited transportation was permitted.

In the case at bar the commodity originated in Illinois, and its destination was Mississippi. Arkansas was a mere transportation conduit through which it passed. Appellant might have received a permit if he had applied for it; but, more than eighteen months after this court had held such transportation to be unlawful, he arrogated to himself the right to disregard reasonable legal prerequisites, and now complains that our decision places a burden on interstate commerce.

If we concede that some burden has been placed upon such commerce, the answer is that it may be done.

In the recent case of *South Carolina Highway Department* v. *Barnwell Bros.*, 303 U. S. 177, 58 S. Ct. 510, 82 L. Ed. 734,[17] it was said: "While the constitutional grant to Congress of power to regulate interstate commerce has been held to operate of its own force to curtail state power in some measure, it did not forestall all state action affecting interstate commerce. Ever since *Wilson* v. *Black Bird Creek Marsh Co.*, 2 Pet. 245, 7 L. Ed. 412, and *Cooley* v. *Board of Port Wardens*, 12 How. 299, 13 L. Ed. 996, it has been recognized that there are matters

[17] The opinion was handed down February 14, 1938.

of local concern, the regulation of which unavoidably involves some regulation of interstate commerce but which, because of their local character and their number and diversity, may never be fully dealt with by Congress. Notwithstanding the commerce clause, such regulation in the absence of congressional action has for the most part been left to the states by the decisions of this court, subject to the other applicable constitutional restraints."

The distinction (mentioned in a footnote to the Barnwell Bros. Case and citing *Hall* v. *DeCuir*, 95 U. S. 485, 24 L. Ed. 547, and other decisions) is this: "State regulation affecting interstate commerce, whose purpose or effect is to gain for those within the state an advantage at the expense of those without, or to burden those out of the state without any corresponding advantage to those within, have been thought to impinge upon the constitutional prohibition even though Congress has not acted."

After citing and commenting upon former decisions, the court said: "In each of these cases regulation involves a burden on interstate commerce. But so long as the state action does not discriminate, the burden is one which the Congress permits because it is an inseparable incident of the exercise of legislative authority, which, under the constitution, has been left to the states."

*Cooley* v. *Board of Port Wardens,* referred to by Mr. Justice STONE (who wrote the opinion in the Barnwell Bros. Case) held that the mere grant of the commercial power to Congress did not of itself forbid states from passing laws regulating pilotage. In one of the head-notes it is said: "The power to regulate commerce includes various subjects, upon some of which there should be a uniform rule, and upon others different rules in different localities. The power is exclusive in Congress in the former, but not in the latter class."[18]

---

[18] A Pennsylvania law provided that a vessel that neglected or refused to take a pilot should forfeit and pay to the master warden of the pilots, for use of the society for the relief of distressed and decayed pilots, their widows and children, one-half the amount of the regular pilotage. The law was held to be an appropriate part of a general system of regulations on the subject of pilotage, and could not be considered as a covert attempt to legislate upon another subject.

As late as 1935 the Supreme Court of the United States,[19] in a case appealed from the Supreme Court of Alabama, 229 Ala. 624, 159 So. 53, (see footnote)[20] held that state regulations incidentally affecting interstate commerce were not invalid.

In *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444, 7 S. Ct. 907, 30 L. Ed. 976,[21] a case originating in Louisiana and decided in 1887, the court said, at pages 447-448: "In all such cases of local concern, though incidentally affecting commerce, we have held that the courts of the United States cannot, as such, interfere with the regulation made by the states, nor sit in judgment on the charges imposed for the use of improvements or facilities afforded, or for the services rendered under state authority."

*New York ex rel. Silz* v. *Hesterberg, Sheriff*, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75, and *Geer* v. *Connecticut*, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793, are of interest and have application.[22]

---

[19] *Clyde Mallory Lines* v. *Alabama, ex rel. State Docks Commission*, 296 U. S. 261.

[20] Headnote to the opinion of the Supreme Court of the United States, after mentioning that art. 1, § 10, cl. 3, of the constitution provides that "no state shall, without the consent of Congress, lay any duty of tonnage, says that the inhibition embraces taxes, and duties which operate to impose a charge for the privilege of entering, trading in, or lying in port. It was then said in effect that invalidity [of the Alabama statute] under this clause depends upon the basis of the exaction, not upon measure by tonnage. This clause does not prevent a reasonable charge to defray the expense of policing service rendered by the state to insure safety and facility of movement of vessels using the harbors. State harbor regulation, and charges to defray the cost, though they may incidentally affect foreign or interstate commerce, are not forbidden by the commerce clause so long as they do not impede the free flow of commerce or conflict with any regulation of Congress."

[21] Complainants were owners of steamboats plying between New Orleans and other ports and places on the Mississippi river and its branches in Louisiana. The burden complained of was that the rates of wharfage exacted by the city under state legislative authority for vessels at New Orleans were excessive. Contention was that the charges were unreasonable as wharfage, and in effect a direct burden on commerce. The court said: "The case is clearly within the principle of the former decisions of this court, which affirm the right of a state, in the absence of regulation by Congress, to establish, manage, and carry on works and improvements of a local character, though necessarily more or less affecting interstate and foreign commerce."

[22] In the Hesterberg Case the relator, a dealer in imported game, was arrested for unlawfully having in his possession on March 30, 1905,

·The true rule to be applied here is that announced in *Hayes* v. *U. S.*, C. C. A. Okla. 1940, 112 F. 2d 417. The thirteenth headnote is: ''Although the Twenty-first Amendment to the federal constitution surrenders to each state the power to prohibit or condition importations of intoxicating liquor in interstate commerce into the state, the amendment does not surrender power of Congress to prohibit or regulate transportation of intoxicating liquor in interstate commerce, and Congress has power to enact legislation to execute [the] amendment. and to penalize its violation.''

In the absence of action by Congress there is no doubt of the right of a state to require those engaged in interstate transportation of liquors—those who use Arkansas highways and other state facilities and who receive its police protection while engaged in such commercial pursuit—to procure from the commissioner of revenues a permit conforming to regulations not inharmonious with act 109 of 1935. No revenue fee may be exacted for the permit, the only charge being that necessary to defray cost of issuance, police inspection, and necessary reports. The commissioner's refusal or failure to promptly comply in reasonable circumstances would be subject to judicial review and immediate compulsion through mandamus.

Affirmed.

---

(being within the "closed" season in the borough of Brooklyn, city of New York), a golden plover lawfully killed in England, and grouse lawfully killed in Russia. They were distinguishable from plover and grouse grown in New York. The court said (pp. 40-41): "That a state may not pass laws directly regulating foreign and interstate commerce has been frequently held by the decisions of this court. But while this is true, it has also been held in repeated instances, that laws passed by the states in the exercise of their police power, not in conflict with laws of Congress on the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws."

In the Geer Case (p. 534) it was said: "The right to preserve game flows from the undoubted existence in the state of a police power to that end, which may be none the less efficiently called into play, because by doing so interstate commerce may be remotely and indirectly affected."