# Richmond

EARL DICKERSON, W. O. PAGE, AND ONE 1939 FORD TRUCK, MOTOR NO. 99T28531 V. COMMONWEALTH OF VIRGINIA.

March 8, 1943.

Record No. 2666.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

314

The opinion states the case.

*Charles Henry Smith* and *E. G. Hobbs* (Selma, N. C.), for the plaintiffs in error.

*Abram P. Staples, Attorney General,* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This case comes before us upon a writ of error granted to a judgment and two orders entered on June 10, 1942, in the Circuit Court of Prince William County, Virginia. The judgment found Earl Dickerson guilty of transporting intoxicating liquor in excess of one gallon within, into and through the State of Virginia, to a consignee in the State of North Carolina, who could not lawfully receive such liquor. One of the orders condemned and ordered to be sold the Ford truck transporting the liquor, and the other order confiscated and forfeited to the Commonwealth 762 gallons of alcoholic beverages loaded on the truck. The three cases were consolidated for trial by and with the consent of the parties, and heard by the court without the intervention of a jury.

The facts, identical in the three cases and presented in a written stipulation, may be briefly stated as follows:

On May 5, 1942, in the County of Prince William, Virginia, Earl Dickerson was found driving a 1939 Ford truck, Motor No. 99T28531. The truck was loaded with 762 gallons of whiskey, and was being driven by Dickerson along U. S. Route No. 1, in the direction of North Carolina, when it was seized by a police officer of this State.

At the time of his arrest, Dickerson did not present to the police officer any evidence that he or any other person had filed with the Virginia Alcoholic Beverage Control Board any bond covering the transportation of the alcoholic beverages within, into or through the State of Virginia. He had a bill of lading or memorandum of shipment showing that the liquor had been purchased from a *bona fide* wholesale whiskey dealer at Dorsey, Maryland, and that it was consigned to William O. Page, trading as Page Trading Company, Garland, North Carolina. The bill of lading did not designate any route to be travelled while in Virginia.

Upon his trial, Dickerson produced evidence of a transportation bond posted with the Board by William O. Page of Wilson, North Carolina, as a carrier. William O. Page is the same person as W. O. Page, the appellant here.

Both Page and Dickerson were residents of the State of North Carolina, and the Ford truck, which was owned by Page, was duly licensed in that State.

The alcoholic beverages were being transported to North Carolina along U. S. Route No. 1, the most direct route, between Dorsey, Maryland, and Garland, North Carolina. Page was not a lawful consignee under the laws of North Carolina. The laws of that State do not permit the transportation by one person of more than one gallon of alcoholic spirits within its borders or its sale by individuals.

The prosecution was conducted under section 44 (c) of the Regulations of the Virginia Alcoholic Beverage Control Board, hereinafter sometimes referred to as the A. B. C. Board.

Appellants seek a reversal of the judgment and orders upon the three following grounds: (1) That the legislature of Virginia had no authority to delegate to the Virginia Alcoholic Beverage Control Board the power to adopt regulations governing the transportation of alcoholic beverages within, into and through Virginia; (2) that the regulations of the Board "have no extra-territorial effect and are null and void insofar as a non-resident is concerned;" and (3) that the regulations dealing with the transportation of alcoholic

beverages through the State of Virginia constituted a burden upon interstate commerce.

The whole of section 44 of the Regulations of the A. B. C. Board reads as follows:

"Where alcoholic beverages are desired to be transported within, into, or through the State of Virginia (except those instances mentioned in Sections 42 and 43 of these Regulations), such transportation shall be engaged in only when in accordance with the provisions of these regulations:

"(a) There shall accompany such alcoholic beverages at all times during transportation, a bill of lading or other memorandum of shipment signed by the consignor showing an exact description of the alcoholic beverages being transported; the name and address of the consignor; the name and address of the consignee; the route to be traveled by such vehicle while in Virginia and such route must be the most direct route from the consignor's place of business to the place of business of the consignee.

"(b) Vehicles transporting alcoholic beverages shall not vary from the route specified in the bill of lading or other memorandum of shipment.

"(c) The name of the consignor on any such bill of lading or other memorandum of shipment shall be the name of the true consignor of the alcoholic beverages being transported and such consignor shall only be a person who has a legal right to make such shipment. The name of the consignee on any such bill of lading or memorandum of shipment shall be the name of the true consignee of the alcoholic beverages being transported and who has previously authorized in writing the shipment of the alcoholic beverages being transported and who has a legal right to receive such alcoholic beverages at the point of destination shown on the bill of lading or other memorandum of shipment."

The Alcoholic Beverage Control Act of Virginia, Virginia Code, 1942, (Michie) chapter 184A, section 4675, subsections (1) to (69a), (Acts of Assembly, 1934, page 100, *et seq.*), created as a department of the Commonwealth

of Virginia, The Department of Alcoholic Beverage Control. The department, designated as the Virginia Alcoholic Beverage Control Board, consists of a board of three members, and the officers, agents and employees of the Board, (section 4675 (3) ), with functions, duties, and powers authorized and prescribed by the Act.

The purpose of the A. B. C. Act, as set out in its title is "to legalize, regulate and control the manufacture, bottling, sale, distribution, transportation, handling, advertising, possession, dispensing, drinking and use of alcohol, brandy, rum, whiskey, * * * and all liquids, beverages and articles containing alcohol obtained by distillation, fermentation or otherwise * * *; to provide for the confiscation and disposition of articles declared contraband hereunder * * *; to impose penalties for violations of the act * * * ." Acts of Assembly, 1934, chapter 94, page 100, *et seq.*

The pertinent sections of the Act dealing with the subject before us are:

Code Section 4675 (5). "Power to make regulations; how published; effect thereof.—(a) The board may from time to time make such reasonable regulations, not inconsistent with this act, nor the general laws of the State, as the board shall deem necessary to carry out the purposes and provisions of this act and to prevent the illegal manufacture, bottling, sale, distribution and transportation of alcoholic beverages, or any one or more of such illegal acts, and from time to time alter, repeal, or amend such regulations or any of them. Such regulations shall be published * * * , and upon being so published shall have the force and effect of law. * * * "

Code, Section 4675 (49a). "Transportation; transportation permits; penalties.—The transportation of alcoholic beverages, other than wine and beer purchased from persons licensed to sell same in this State, and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, within, into or through the State of Virginia in quantities in excess of one gallon is prohibited except in accordance with regulations

adopted by the Virginia Alcoholic Beverage Control Board pursuant to this section.

"The board may adopt such regulations governing the transportation of alcoholic beverages, other than wine and beer purchased from persons licensed to sell same in this State and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, within, into or through Virginia in quantities in excess of one gallon as it may deem necessary to confine such transportation to legitimate purposes and may issue transportation permits in accordance with such regulations.

"Any person who shall transport alcoholic beverages, other than wine and beer purchased from persons licensed to sell the same in this State and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, in excess of one gallon, in violation of such regulations shall be guilty of a misdemeanor and punished as provided in section 4675 (62)." (1936, p. 434.)

█ The regulation and control of liquor traffic—the manufacture, sale, and transportation of alcoholic beverages —has long been a difficult problem. Because of the recognized evils attendant upon the traffic it has been held to be subject to the police power of the State, in the interest of the safety, health, and well-being of the local communities. The Act of 1934 was most carefully, skillfully and comprehensively drawn, with purposes definitely set out to rigidly control and regulate the liquor traffic in all of its phases.

Section 4675 (5) expressly empowers the A. B. C. Board to make, from time to time, such reasonable regulations as the Board may deem necessary to carry out the purposes and provisions of the Act, and to prevent the illegal manufacture, sale, possession, use, transportation, etc., of alcoholic beverages.

Section 4675 (49a) enacted in 1936, as an amendment to the original Act, expressly prohibits the transportation of alcoholic beverages, in excess of one gallon, other than wine and beer purchased from persons licensed to sell the same in this State, within, into or through this State, except

in accordance with the regulations adopted by the A. B. C. Board. It further expressly authorizes and empowers the Board to adopt such regulations governing the transportation of such beverages in excess of one gallon within, into or through Virginia, "as it may deem necessary to confine such transportation to legitimate purposes," and "to issue transportation permits in accordance with such regulations." It provides that a person violating such regulations shall be guilty of a misdemeanor, and punished as provided by section 4675 (62).

Thus may be clearly seen in the Title to the Act, in the provisions of the above sections of the Act, and in many of its other provisions, the definite policy of the legislature to control and regulate the liquor traffic within the standards prescribed by the Act. A machinery of control was created and supplied with authority for efficient operation.

The Board is limited to the making of reasonable regulations to carry out the purposes and provisions of the Act, provided they are not in conflict with the Act or the general laws of the State. This is the definite standard and intelligible principle to which the Board must conform. This standard confines transportation to legitimate purposes. It does not interfere with legitimate transportation in accordance with reasonable regulations.

There is nothing indefinite about the adjective "legitimate." In its usual and common acceptance, as defined in Webster's New International Dictionary, Second Edition, Unabridged, it means "accordant with law or with established legal forms and requirements" or "lawful." In this case, its meaning is so clear that it is conceded that W. O. Page, consignee of the liquor in question, is an unlawful consignee. A transportation to an unlawful consignee is a transportation not in "accord with law" or for a "lawful" purpose.

Much has been said and written with reference to the cardinal principle of our fundamental law that a legislature ought not and cannot delegate its power to make laws to any other department or body. The line of demarcation

between legislative functions, which must be exercised by the legislature itself, and those functions of an administrative or executive nature which may be delegated to a board or an officer, is not always clear. The question has been considered by many courts in this country, state and federal, including this court.

In the complex civilization under which we live, if the legislature were compelled to make provisions for all the minutiae of regulation of industry, economics, and human conduct, it would be deprived of much of the power of effective legislation to protect the safety, general welfare, and morals of the public.

The delegation of power to make administrative rules and regulations for the purpose of carrying out the policy of the lawmaking body, within the standard set by it, is exemplified in the grants to municipal and local bodies, to public service commissions, to health and sanitary boards, to commissions charged with the duty of carrying out statutes designed to control diseases of stock, trees, and crops, to building and zoning commissions, to commissions supervising the production and sale of milk, and many other boards and agencies charged with the duty of promoting the public welfare.

The legislature is not continuously in session. It cannot exercise direct or immediate supervision over State agencies. It must act, if it acts at all, in many cases through its agents or agencies to make its legislation effective. It cannot perform its more important duties if it has to pass on the fitness of a particular individual to have a license to sell wine or beer, or to receive or transport whiskey or gin. In many matters, it must confine itself to the making of policies and the fixing of standards under which its agents or agencies may operate. To deny the right of these agencies to function effectively would set at naught the express purpose of the legislation.

See an exhaustive annotation on the "Permissible Limits of Delegation of Legislative Power," *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, 448, 55 S. Ct. 241, 79 L. Ed. 446, 474.

■ Mr. Justice Holt, in *Southern Ry. Co.* v. *Common-wealth*, 159 Va. 779, 167 S. E. 578, reviewed and discussed leading cases dealing with this subject. We there subscribed to the rule that there may be a valid delegation of legislative power to an agent to determine facts and things upon which action under a statute depends, where a statute sufficiently indicates the legislative purpose and merely leaves administrative details to an agent.*

In *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259, Judge Burks, in discussing the delegation of power to make regulations, quoted with approval the following from *Block* v. *Chicago*, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219:

■ " 'It is true that a legislative body cannot divest itself of its proper function to determine what the law shall be, but it may authorize others to do those things which it might properly, but cannot understandingly or advantageously do. That rule was stated as long ago as the case of *People* v. *Reynolds*, 5 Gilm. 1, where it was said that without that power legislation would become oppressive and yet imbecile, and that local laws, almost universally, call into action to a greater or less extent the agency and discretion either of the people or individuals to accomplish in detail what is authorized or required in general terms. Government could not be carried on if nothing could be left to the judgment and discretion of administrative officers, and the doctrine of that case has been steadily adhered to ever since.' "

In *Thompson* v. *Smith*, 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, it was said:

■ "Mere matters of detail within the policy, and the legal principles and standards established by the statute or ordinance, may properly be left to administrative discretion, for the determination of such matters of detail is more essentially ministerial than legislative. In declaring the policy of

---

*The Supreme Court of the United States reversed our judgment in this case. *Southern Ry. Co.* v. *Commonwealth*, 290 U. S. 190, 54 S. Ct. 148, 78 L. Ed. 260. The majority of that Court held that the statute involved was not merely a police regulation and that it was violative of the due process clause of the Federal Constitution.

the law and fixing the legal principles and standards which are to control in the administration of the law, general terms, which get precision from the technical knowledge or sense and experience of men and thereby become reasonably certain, may be used; and an administrative officer or bureau may be invested with the power to ascertain and determine whether the qualifications, facts or conditions comprehended in and required by such general terms exist, and whether the provisions of the law so fixed and declared have been complied with in accordance with the generally accepted meaning of the words."

In the case of *Assaid* v. *Roanoke*, 179 Va. 47, 18 S. E. (2d) 287, a delegation of authority to a ministerial officer, without declaring the policy of the law which was to control the officer in exercising his opinion, was declared invalid.

The appellants rely upon *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446 and *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570. In each case, the regulations of administrative boards were declared invalid as being enacted in pursuance of an unlawful delegation of legislative power, in that the delegation of power contained no definition of the conditions and circumstances under which the acts sought to be regulated were to be allowed or prohibited, that is, failed to set up definite standards to be followed by such boards in the execution of their duties. The opinions in these cases review and illustrate the principle of law involved and exemplify its application to the peculiar circumstances reviewed. The facts in those cases distinguish them from the case here.

Code, sections 4675 (5) and (49a) and section 44 of the regulations of the A. B. C. Board are intended to protect citizens of Virginia from the illicit delivery, sale, and transportation of ardent spirits. We cannot escape the conclusion that one who deliberately and intentionally violates the Federal Constitution and the law of his resident State, in the unlawful transportation of liquor would hardly hesitate to violate the laws of this State while passing through

it if he thought he might profit thereby. We cannot shut our eyes to the possibilities of such a situation and the necessity of prevention. The provisions of the statute and the regulations of the Board in accordance therewith are reasonably designed to avoid the threatened evil. They afford no complaint to one engaged in a lawful enterprise.

Section 44 (c) has no extra-territoriality, and we do not understand that the Commonwealth contends it has. The law of North Carolina is not in question here. The appellants are not charged with, or being tried for, violating the law of North Carolina. Page, the consignee, is not personally a defendant. He has intervened in the case only as a claimant of the condemned truck and confiscated liquor. Dickerson is charged with transporting liquor to an unlawful consignee,—a transportation not for a legitimate purpose, in violation of the laws of Virginia. The issue hinges upon his guilt or innocence of that specific offense.

But, say the appellants, Virginia, under its police power, can only legislate with respect to a resident consignee and the regulation was intended to apply only where the unlawful consignee resided in Virginia. This contention overlooks the language of our statute, the language of the regulation, and the effect of the Twenty-first Amendment to the Federal Constitution. The statute authorizes the Board to confine all transportation of liquor within, into or through Virginia to legitimate purposes. The regulation confines its transportation to one who has a legal right to receive the shipment at its stated point of destination, that is, to a lawful consignee.

Whether or not North Carolina had a law forbidding the receipt of the shipment by the consignee was a question of fact,—not a question of law. The provisions of that law were not in dispute. Its existence or reality only was involved. None of its provisions here required construction or interpretation.

The Twenty-first Amendment of the Federal Constitution, the supreme law of the land, provides as follows:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Under both the Federal Constitution and the laws of Virginia, the transportation of the liquor through Virginia was for an unlawful purpose. The liquor was contraband,—a contraband subject to immediate seizure under the laws of Virginia. Virginia Code, 1942, (Michie) section 4675 (36). Its carrier was a violator of those laws.

The next question is whether section 44 (c) of the regulations of the A. B. C. Board constitutes a burden upon interstate commerce. The appellants rely upon *Martin* v. *Commonwealth*, 126 Va. 715, 100 S. E. 836; *Williams* v. *Commonwealth*, 169 Va. 857, 192 S. E. 795; and *Surles* v. *Commonwealth*, 172 Va. 573, 200 S. E. 636, for an affirmative answer.

*Martin* v. *Commonwealth, supra,* was decided in 1919. At that time there was no Virginia statute regulating the transportation of liquor through Virginia in interstate commerce. The determination of the two subsequent cases was based upon our conception of the construction then placed by the Supreme Court of the United States upon the Constitution of the United States and the Acts of Congress relating to interstate commerce then effective.

In recent years, the Supreme Court of the United States has greatly broadened its views as to the permissible extent to which the several States may regulate and control the transportation of liquor in interstate commerce. This extension is based, with reason, we think, upon the attendant dangers to the communities from the unregulated transportation of such beverages into, within or through the local communities, and upon the spirit and letter of the Twenty-first Amendment to the Constitution of the United States.

Where reasonable regulations affecting the interstate transportation of liquor are in the interest of the safety, health and well-being of local communities and merely give added assurance that the liquor will be transported without

diversion or unlawful distribution within the State, the Supreme Court now holds that a State may enact effective statutes and measures under its police power to accomplish the desired end.

In *Ziffrin* v. *Reeves*, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, decided November 13, 1939, the Court upheld a regulation of the Kentucky Alcoholic Beverage Control Law restricting the transportation of liquor to a common carrier, such as a railroad or express company, authorized by proper certificate from the Division of Motor Transportation in the Department of Business Regulations. Ziffrin had permission under the Federal Motor Carrier Act, 1935, (Title 49 U. S. C. A., section 301, *et seq.*) to operate as a common carrier, but was denied a certificate to transport liquor in interstate commerce, although he had previously thereto continuously received whiskey from distillers in Kentucky for direct carriage to consignees in Illinois.

Mr. Justice McReynolds, in upholding the right of Kentucky to enact the regulation, although it imposed some burden upon interstate commerce, said: "The Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause. Without doubt a state may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them." (Citing cases.)

He further said that the regulation was within the police power of the state and that whiskey removed from permitted channels was contraband and subject to immediate seizure and not to be regarded as a proper article of commerce.

In *Duckworth* v. *Arkansas*, 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 261, 138 A. L. R. 1144, decided December 15, 1941, the Court upheld a provision of an Arkansas statute, requiring a permit to be obtained for the transportation of

intoxicating liquor within the boundary of that State, as a local police regulation permissible under the commerce clause of the Federal Constitution. The Arkansas statute made it unlawful for any person to ship into the State any distilled ardent spirits without first having obtained a permit from the State Commissioner of Revenue under rules and regulations promulgated by the Commissioner. Duckworth was arrested in Arkansas while engaged in transporting, without a permit, a load of liquor from a point in Illinois through Arkansas to a point in Mississippi. At the time of his offense, there were no regulations regulating transportation of liquor through Arkansas, the regulations then in force being adapted to transportation and delivery within the State. The appellant admitted that the intoxicating liquor was intended to be transported into Mississippi for illegal use there; but the majority of the Court did not take that into consideration.

The issue in the above case involved transportation alone, there being no question of sale or use within the State of Arkansas. Mr. Chief Justice Stone, in referring to other cases where local restrictions had been deemed a burden upon interstate commerce, there said: "The present scheme of regulation is narrower in operation and has a less restrictive effect upon the commerce. It does not forbid the traffic in liquor, nor does it impede it more than is reasonably necessary to inform the local authorities who is to effect the transportation through the state, and to afford opportunity for them to police it."

We quote further from his opinion because of its bearing upon the instant case:

"While the commerce clause has been interpreted as reserving to Congress the power to regulate interstate commerce in matters of national importance, that has never been deemed to exclude the states from regulating matters primarily of local concern with respect to which Congress has not exercised its power, even though the regulation has some effect on interstate commerce. As we had occasion to point out at the last term of Court, there are many matters

which are appropriate subjects of regulation in the interest of the safety, health and well-being of local communities which, because of their local character and their number and diversity and because of the practical difficulties involved, may never be adequately dealt with by Congress. Because of their local character also there is wide scope for local regulation, without impairing the uniformity of control over the commerce in matters of national concern and without materially obstructing the free flow of commerce, which were the principal objects sought to be secured by the commerce clause. Such regulations, in the absence of supervening Congressional action, have for the most part been sustained by this Court, notwithstanding the commerce clause."

These later decisions of the Supreme Court have the effect of overruling our conclusions in the cases of *Williams* v. *Commonwealth, supra,* and *Surles* v. *Commonwealth, supra.*

 We are bound by the judicial construction placed upon the provisions of the Federal Constitution by the Supreme Court of the United States. It is the final authority on that subject.

"It is a fundamental principle of the constitutional system of government of the United States that the decisions of the Federal Supreme Court are final and authoritative declarations as to the proper and correct construction to be placed on the Constitution and laws of the United States, and as to whether a State law contravenes any provisions of the Federal Constitution. On this principle, the construction given by that court to the Constitution and laws of the United States is received by all as the true construction; * * * ."
11 Am. Jur., Constitutional Law, section 104 and cases cited; 6 R. C. L., Constitutional Law, section 82.

 We conclude that section 44 (c) of the regulations of the A. B. C. Board is a reasonable requirement to accomplish the purposes and objects of the Virginia Alcoholic Beverage Control Act. It affords no just ground of complaint to a lawful transporter, consignor, or consignee. It does not prevent or interfere with lawful interstate transpor-

tation. The execution and delivery of a bill of lading is a mere incident of business. It is not difficult to truthfully and lawfully state both the name of the consignor and consignee. As a matter of fact and of law, this is what should always be done. Section 44 (c) only requires that to be done which is reasonable and necessary to protect the public's interest in preventing the unlawful distribution or use of whiskey within Virginia. Judicial relief may be asked for only when the regulations of the Board are unreasonable or arbitrary.

We find no error in the judgment and orders of the trial court, and they are affirmed.

*Affirmed.*