## Staunton

FELIX J. BROWN, ET AL. v. CITY OF RICHMOND, ET AL.

J. RUPERT PICOTT, INDIVIDUALLY, ETC., ET AL. v. CITY OF RICHMOND, ET AL.

September 11, 1963.

Records Nos. 5568, 5569.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Martin A. Martin,* for the appellants.

*J. E. Drinard, City Attorney,* for appellees, City of Richmond and Greater Richmond Civic Recreation, Inc.

*R. D. McIlwaine, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for appellee, T. Gray Haddon, Commonwealth's Attorney for City of Richmond.

BUCHANAN, J., delivered the opinion of the court.

These two cases are here on separate appeals from decrees entered on May 2, 1962, by the Hustings Court of the City of Richmond, Part II, denying the relief sought by the appellants in separate suits instituted by them in that court. However, they are premised on similar situations, involve the same ultimate question and may be dealt with in one opinion.

The City of Richmond, herein called the City, owns a park in the City which is used for games of baseball and other public sports and purposes, and known as Parker Field. It also owns a building in the City known as the Mosque, containing an auditorium and ballroom and used for public theatrical and musical performances and dances. The City does not operate these properties itself but lets or leases them to others. The plaintiffs, all Negro citizens of the City, desired to attend the public baseball games at Parker Field and the public performances at the Mosque without being segregated as required by §§ 18.1-356 and 18.1-357 of the Code of Virginia,* but were not allowed to do so. They brought these suits to have the statutes declared unconstitutional and for injunctions to prevent their enforcement.

The court below held that the action of the lessee of Parker Field and the actions of the lessees of the Mosque in compelling segregation of the races pursuant to said statutes were private actions, did not constitute State action, and that insofar as the statutes were applicable to the facts in the cases they did not violate the provisions of the Constitution of the United States or any amendment thereof, and that it was the duty of the lessee of Parker Field, and the duty of the lessees of the Mosque, to comply with said statutes. The substance of the appellants' contentions under their assignments of error

---

* Section 18.1-356 requires every person, institution or corporation operating, sponsoring or permitting any place of public entertainment or public assemblage which is attended by both white and colored persons to separate the white race and the colored race, and to set apart and designate in each such place certain seats to be occupied by white persons and certain seats to be occupied by colored persons; and provides that any such person, institution or corporation failing or refusing to comply therewith shall be guilty of a misdemeanor and fined.

Section 18.1-357 provides that any person who fails to take the seat assigned pursuant to § 18.1-356, or fails to obey the request of one in charge to change his seat from time to time as occasion requires, in order that said § 18.1-356 may be complied with, shall be guilty of a misdemeanor and fined; and such person may be ejected from the premises.

Said two statutes are set out in full in *Bissell v. Commonwealth*, 199 Va. 397, 398-9, 100 S.E. 2d 1, 2-3.

is that these statutes violate the Equal Protection Clause of the Fourteenth Amendment, and that the City can neither authorize nor permit its lessees to segregate on account of race or color the patrons of these public performances or activities.

### Brown Case—No. 5568—Parker Field

The bill in this case was filed by Felix J. Brown and six others, who sued for the benefit of themselves and others in the City similarly situated. Defendants were the City; T. Gray Haddon, Commonwealth's Attorney for the City; Greater Richmond Civic Recreation, Incorporated, herein referred to as GRCR; and Richmond Baseball, Incorporated. The bill alleged that the City had leased Parker Field to GRCR and granted to it the exclusive use thereof with the right to adopt rules and regulations for the operation thereof, which should require the operators and patrons to abide by all the laws of the State and ordinances of the City, including §§ 18.1-356 and 18.1-357; that GRCR had subleased the premises to Richmond Baseball, and all of the defendants require all of the patrons of the games to abide by said segregation statutes.

The City and GRCR filed their answer and exhibited therewith a copy of the lease from the City to GRCR, as well as a copy of the lease from GRCR to Richmond Baseball. They denied that either of them required patrons of Richmond Baseball to abide by the segregation statutes or that they had done anything or taken any action with respect to the use of Parker Field by Richmond Baseball that makes said statutes applicable to either of them.

The lease from the City to GRCR is for a term of twenty years from April 1, 1954, for a rental of $1 per annum in addition to the cost of electric energy furnished by the City, and for the purpose of conducting on the premises recreational, athletic and other events, with the right to charge compensation for the uses. The lease provided that before any contract or lease for the use of the property or the facilities became effective it should be approved by the city manager or his representative. It further provided that GRCR should transfer to the City without cost its entire capital stock.

The lease from GRCR to Richmond Baseball is dated January 1, 1959, is for a term of five years, subject to cancellation, and gives to the lessee the exclusive use of Parker Field for baseball games, with some specific reservations, for a rental based on a percentage of gross receipts.

Neither the lease from the City to GRCR nor the lease from the latter to Richmond Baseball contains any provision or any reference with respect to the segregation of the races at the games, and there is no evidence that either the City or GRCR in any other manner required segregation at the games.

The answer of T. Gray Haddon, Commonwealth's Attorney for the City, asserts that the plaintiffs may not attend public baseball games at Parker Field without being subject to said segregation statutes. At the trial he was called as an adverse witness by the plaintiffs and testified that if patrons at a baseball game refused to be segregated it would be his legal duty to prosecute them.

Richmond Baseball, Incorporated, did not answer, and the bill was taken for confessed as to it.

The only other evidence, all of which was heard by the court without a jury, was that of four witnesses, members of the Negro race, offered by the plaintiffs, and was to the effect that after acquainting the mayor and city manager of the City with their purpose, they inquired of the general manager and publicity manager of Richmond Baseball whether they could attend the baseball games without being segregated; that they at first arrived at a tentative agreement wtih the baseball officials that they would not be segregated for the summer of 1961, but that they were later informed by these officials that this policy would have to be changed and that Negroes would be segregated because of the law and that arrests would be made for violations.

At the conclusion of the evidence the court sustained the motion of the City and GRCR to strike the evidence and entered summary judgment for them, but overruled a similar motion by the defendant Haddon. Later the court overruled plaintiffs' motion for summary judgment and entered the decree now appealed from.

### Picott Case—No. 5569—Mosque

A second amended bill was filed in this case by J. Rupert Picott and three others who alleged that they were Negro citizens of the City; that the City owns and operates the Mosque and frequently leased it to defendants, Musical Celebrities, Incorporated, and Richmond Symphony, Incorporated, for performances and affairs for the general public; that the City had always required said lessees to segregate all patrons of said affairs and had itself required segregation at all of its public affairs given at the Mosque; that all of said

defendants were required by §§ 18.1-356 and 18.1-357 to segregate all persons in all places of public assemblage, including the Mosque, on account of their race or color; that plaintiffs desired to attend public affairs at the Mosque but could not do so without being segregated, and that said defendants, as well as defendant T. Gray Haddon, Commonwealth's Attorney for the City, threatened to have and would have plaintiffs arrested unless they complied with the segregation statutes.

The City answered that it permitted the use of the auditorium from time to time by Richmond Symphony and Musical Celebrities pursuant to provisions of its ordinance and under written applications on a form exhibited with its answer; that the terms and conditions of the permit did not require that there be compliance with said statutes; but it averred that the plaintiffs may not attend public performances in the auditorium by Richmond Symphony and Musical Celebrities attended by both white and colored persons without being subject to the provisions of said statutes. The form of the permit exhibited by the City contained no requirement that the patrons of performances be segregated. It contained a provision that "All responsibility that performances given will conform with all the laws and ordinances of the City, State and Federal Governments will be assumed by the applicant." The trial court properly held that this provision related only to the character of the performances.

Musical Celebrities answered that it was required by the laws of the Commonwealth to separate the races and set apart certain seats for white persons and certain seats for colored persons, and as long as such laws are in force it did not intend to violate them. But it denied that it threatened to have or did have the plaintiffs prosecuted for violations.

Richmond Symphony's answer admits that it has been and will in the future seek to be permitted to use the Mosque for its concerts and has placed persons of different races in separate sections. It denies generally other matters alleged in the bill as relating to it.

The answer of T. Gray Haddon, Commonwealth's Attorney for the City, neither admitted nor denied the allegations of the bill, but asserted that the plaintiffs might not attend public performances by Richmond Symphony and Musical Celebrities attended by both white and colored persons without being subject to the provisions of said statutes. Called as an adverse witness by the plaintiffs he testified he would prosecute cases brought in the Hustings Court for the violation of these statutes.

The other testimony in the case was from the plaintiffs' witnesses Picott and Henderson to the effect that they had conferred with officials of Musical Celebrities and Richmond Symphony and were told it was their understanding that the City required segregation by its lessees and that they would have to follow the law and require segregation at their public performances.

At the conclusion of the evidence the City moved to strike the evidence as to it and enter summary judgment in favor of the City, which motion the court sustained, but overruled the motion of defendant Haddon to strike the evidence as to him. Afterwards the court overruled plaintiffs' motion for summary judgment and entered the decree appealed from.

### Constitutionality of the Statutes

The question of the constitutionality of the two Virginia statutes, §§ 18.1-356 and 18.1-357, must be determined according to the pronouncements of the Supreme Court. "We are bound by the judicial construction placed upon the provisions of the Federal Constitution by the Supreme Court of the United States. It is the final authority on that subject." *Dickerson* v. *Commonwealth*, 181 Va. 313, 330, 24 S.E.2d 550, 558.

In *Brown* v. *Board of Education*, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.ed. 873, the Supreme Court held that "in the field of public education the doctrine of 'separate but equal' has no place." It was found to have no place also in the enjoyment of public beaches and bathhouses in *Dawson* v. *Mayor and City Council of Baltimore*, 4 Cir., 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.ed. 774; nor with respect to public parks, public golf courses, publicly operated restaurants and municipal air terminals, *Henry* v. *Greenville Airport Commission*, 279 F.2d 751, and cases cited at 753.

In the *Dawson* case, *supra*, 220 F. 2d at 387, the court said:

"* * * [I]t is obvious that racial segregation in recreational activities can no longer be sustained as a proper exercise of the police power of the State; for if that power cannot be invoked to sustain racial segregation in the schools, where attendance is compulsory and racial friction may be apprehended from the enforced commingling of the races, it cannot be sustained with respect to public beach and bathhouse facilities, the use of which is entirely optional." *Cf. Boynton* v. *Commonwealth of Virginia*, 364 U.S. 454, 81 S. Ct. 182, 5 L.ed.2d 206.

The Supreme Court has definitely decided in a number of recent cases that segregation of the races as required by said §§ 18.1-356 and 18.1-357 is prohibited by the Fourteenth Amendment of the United States Constitution, and hence is invalid and unenforceable.

In *Johnson* v. *Virginia*, 373 U.S. 61, 83 S.Ct. 1053, 10 L.ed.2d 195 (decided April 29, 1963), Johnson, a Negro, was seated in the Traffic Court of the City of Richmond in a section reserved for whites, seating space in the courtroom having been assigned on the basis of race, the seats on one side of the aisle being for the use of Negro citizens and the seats on the other side for the use of white citizens. Johnson was requested by the bailiff to move from the white section but refused. The judge of the court summoned him to the bench and instructed him to take a seat reserved for Negroes and he again refused. He was thereupon convicted for his contempt. He appealed to the Hustings Court of the City, where he was again convicted, and we refused to grant to him a writ of error on the ground that his conviction was plainly right. The Supreme Court reversed his conviction and stated in its opinion:

"* * * [T]he arrest and conviction rested entirely on the refusal to comply with the segregated seating requirements imposed in this particular courtroom. Such a conviction cannot stand, for it is no longer open to question that a State may not constitutionally require segregation of public facilities. * * State-compelled segregation in a court of justice is a manifest violation of the State's duty to deny no one the equal protection of its laws." 373 U.S. at 62, 83 S.Ct. at 1054, 10 L.ed.2d at 196.

If a court, despite its generally recognized inherent power to control its proceedings and punish for disobedience to its orders, may not separate the races in its courtroom, it necessarily follows that the legislature may not constitutionally require separation of the races at a public theatrical or musical performance or a public baseball game. See also *Wood, et al.* v. *Vaughan, Mayor, et al.*, 4 Cir., 321 F.2d 480.

In *Peterson* v. *City of Greenville*, 373 U.S. 244, 83 S.Ct. 1119, 10 L.ed.2d 323, a group of Negroes seated themselves at a lunch counter in a store in Greenville, South Carolina, for the purpose of being served. The manager of the store requested them to leave because integrated service was contrary to local custom and in violation of a city ordinance requiring the separation of the races in restaurants. They refused to leave, were arrested and convicted of violating the trespass statute of the State. The court held that their

right to equal protection of the laws under the Fourteenth Amendment had been violated and said:

"Consequently these convictions cannot stand, even assuming, as respondent contends, that the manager would have acted as he did independently of the existence of the ordinance. The State will not be heard to make this contention in support of the convictions. For the convictions had the effect, which the State cannot deny, of enforcing the ordinance passed by the City of Greenville, the agency of the State. When a State agency passes a law compelling persons to discriminate against other persons because of race, and the State's criminal processes are employed in a way which enforces the discrimination mandated by that law, such a palpable violation of the Fourteenth Amendment cannot be saved by attempting to separate the mental urges of the discriminators."

The court made a slight genuflection to the principle stated in *Burton* v. *Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.ed.2d 45, 50, that "Private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the state in any of its manifestations has been found to have become involved in it"; but then went on to say:

"* * * When the State has commanded a particular result it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved' in, and in fact, has removed that decision from the sphere of private choice. It has thus effectively determined that a person owning, managing or controlling an eating place is left with no choice of his own but must segregate his white and Negro patrons. The Kress management, in deciding to exclude Negroes, did precisely what the city law required."

On the authority of the *Peterson* case a three-judge Federal court at Alexandria, in the Eastern District of Virginia, on June 27, 1963, held that said §§ 18.1-356 and 18.1-357 were "void and of no effect because they violate the Fourteenth Amendment of the Constitution of the United States." This was in a suit brought by Negroes who had been refused admittance to motion picture theaters in Arlington and Fairfax counties, Virginia, which admitted only white persons. *Blackwell, et al.* v. *Harrison, et al.*, D.C., 221 F. Supp. 651.

See also *Randolph* v. *Virginia*, and companion cases in 374 U.S. 97-100, 83 S.Ct. 1685, 1686, 10 L.ed.2d 1025-6.

## State or Private Action

Private action is action taken voluntarily and not by State compulsion. State action is action taken by the State or a political subdivision, or by a person or persons acting for the State or political subdivision, or pursuant to their authority or direction, or in obedience to their requirement. *Cf. Smith* v. *Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.ed. 987; *Baldwin* v. *Morgan,* 251 F.2d 780.

*Department of Conservation and Development* v. *Tate,* 4 Cir., 231 F.2d 615, cited in *Cooper* v. *Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.ed.2d 5, was a suit to enjoin threatened racial discrimination in a State park. The Court of Appeals affirmed the decision of the District Court, which had held that if the park or any part thereof was leased the lease must not directly or indirectly operate so as to discriminate against the persons of any race. The opinion of the Court of Appeals stated:

"* * * It is perfectly clear under recent decisions that citizens have the right to the use of the public parks of the state without discrimination on the ground of race. Dawson v. Mayor and City Council of Baltimore, 4 Cir., 220 F. 2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133; Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141. And we think it equally clear that this right may not be abridged by the leasing of the parks with ownership retained in the state. See Lawrence v. Hancock, D.C., 76 F. Supp. 1004, 1009; Muir v. Louisville Park Theatrical Ass'n, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112." 231 F.2d at 616.

In *Muir* v. *Louisville Park Theatrical Ass'n,* 347 U.S. 971, 74 S.Ct. 783, 98 L.ed. 1112, the Court of Appeals had affirmed a holding of the District Court that the appellants, Negroes, were entitled to play on the golf courses in Iroquois Park in Louisville and to fish in the lake in the same park; but that the Louisville Park Theatrical Association, a privately owned enterprise which leased from the city an amphitheater in the park, in the operation of which the city did not participate either directly or indirectly, was guilty of no unlawful discrimination in refusing to admit colored persons to its operatic performances during the summer. The Supreme Court vacated the judgment of the Court of Appeals and remanded the case "for consideration in the light of the Segregation Cases decided May 17, 1954, *Brown* v. *Board of Education, ante,* p. 483, and conditions that now prevail." 347 U.S. at 971, 74 S.Ct. at 783, 98 L.ed. at 1112.

It is plain on the pleadings and evidence in these cases that Rich-

mond Baseball, Incorporated, lessee of Parker Field, and Musical Celebrities, Incorporated, and Richmond Symphony, Incorporated, lessees of the Mosque, in separating the white and colored races and designating certain seats to be occupied by white persons and certain seats to be occupied by colored persons at public performances therein, were acting because of and in compliance with § 18.1-356, and their actions in this respect consequently constituted State action and were contrary to the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution as interpreted by the Supreme Court.

We therefore hold that under the decisions of the Supreme Court of the United States, §§ 18.1-356 and 18.1-357 of the Code of Virginia are invalid and unenforceable.

The decrees appealed from in these two cases are accordingly reversed and the cases are remanded to the court below with direction to issue its injunctions requiring said lessees of Parker Field and of the Mosque to discontinue the segregation of persons attending public performances or events thereon or therein on account of race or color, and prohibiting the City of Richmond and Greater Richmond Civic Recreation, Incorporated, from requiring any lessee of said properties to enforce such segregation at any public performance or event on said premises, and prohibiting defendant T. Gray Haddon, Commonwealth's Attorney for the City of Richmond, from prosecuting persons, institutions or corporations for violation of said §§ 18.1-356 and 18.1-357 of the Code of Virginia.

*Reversed and remanded.*